**Stephen E. BURTON, Appellant,**

v.

**FOSTER WHEELER CORPORATION; Donna Terry, Administrative Law Judge; Bonnie Kittinger, Former Presiding Arbitrator; and Workers' Compensation Board, Appellees.**

**No. 2001–SC–0348–WC.**

Supreme Court of Kentucky.

April 25, 2002.

---

**16.** 847 F.2d 304 (6th Cir.1988).

**17.** Ky.App., 818 S.W.2d 267 (1991).

**18.** *Id.* at 268 (emphasis added).

Ray B. White, Bowling Green, for Appellant.

John G. Grohmann, C. Patrick Fulton, Fulton & Devlin, Louisville, for Foster Wheeler Corporation.

COOPER, Justice.

Appellant Stephen E. Burton sustained a work-related injury on June 26, 1998, while operating a D-3 bulldozer at a landfill owned by his employer, Foster Wheeler Corporation. The bulldozer moved on caterpillar treads, as opposed to wheels, and was equipped with a steel safety cage, or "roll cage," that was attached to four 4″ × 4″ steel posts attached at the top by steel roll bars. The machine had also been equipped with a seat belt; however, the right strap of the belt was broken so that the belt could not be fastened.

The accident occurred when the front end of the bulldozer slipped into a ditch at the bottom of an incline, throwing Appellant forward so that his head struck the front roll bar of the safety cage, rendering him dazed and unconscious. His workers' compensation claim alleged that he sustained totally disabling traumatic brain and musculoskeletal injuries and that he was entitled to a 15% enhancement of his award under KRS 342.165(1). The Administrative Law Judge (ALJ) determined that, although Appellant sustained a musculoskeletal injury, he did not sustain a brain injury of appreciable proportions and that his claim under KRS 342.165 should be denied because he had failed to point to any specific statute or regulation that required a D-3 bulldozer to be equipped with an operable seat belt. The decision was affirmed by the Workers' Compensation Board (Board) and the Court of Appeals.

After an Arbitrator awarded the claimant an award for total disability, the employer sought *de novo* review before an ALJ. The records of Southwest Hospital that were introduced into evidence indicate that Appellant sought medical treatment

at the emergency room on June 26, 1998, complaining of blurred vision, shakiness, headaches, dizziness, and vomiting. A brain CT scan that was taken at the time revealed no evidence of hemorrhage or hematoma, and x-rays revealed no recent fractures. He was given anti-inflammatory and pain medication, was advised to rest quietly for about a day with someone checking him periodically for particular symptoms, and was advised that he could return to light duty on June 29, 1998. The discharge diagnosis was muscle strain with spasm and a contusion on the forehead. Appellant was later treated and evaluated by a number of physicians who disagreed about both his condition and his prognosis.

About a month after the injury, Dr. Garcia, a neurologist, diagnosed various musculoskeletal strains as well as post-traumatic syndrome as manifested by persistent dizziness, light-headedness, headaches, blurred vision, and loss of balance. He admitted that there were no objective medical findings to support the existence of a closed head injury and that there were some discrepancies in the reported symptoms, but was of the opinion that Appellant had sustained a concussion and that he was unable to work.

On September 2, 1998, the claimant saw Dr. Shields, a neurosurgeon, who diagnosed a whiplash injury and interpreted an MRI as revealing an osteophyte at C3–4 and a congenital fusion at C6–7. Although he recommended a myelogram, none was introduced into evidence.

Dr. Bilkey, a specialist in physical and rehabilitation medicine, began treating Appellant on September 24, 1998, for headaches and neck, shoulder, and back pain. He referred Appellant to Dr. Dubicki for neuropsychological testing which revealed a global decline in cognitive function that was not consistent with a traumatic brain injury. He noted that Appellant's appar-

ent history of alcohol abuse would account for the same pattern of cognitive loss. Both Drs. Dubicki and Bilkey found evidence of considerable anxiety, and Dr. Bilkey attributed Appellant's complaints of chest pain at a December, 1998, visit to an anxiety attack. He concluded that Appellant did not sustain a true traumatic brain injury but did have anxiety and a global decline in cognitive function that was unrelated to the accident. In addition to temporary physical restrictions, he assigned a 5% impairment for musculoskeletal complaints but could not say that the impairment was work-related.

In May 1999, Dr. Gleis, an orthopedic surgeon, examined Appellant and reviewed the medical records. In addition to imposing various work restrictions, he assigned a 5% musculoskeletal impairment under the DRE model. He also assigned a 5% brain impairment but did not specify whether it was attributable to the traumatic incident. It was his opinion that Appellant's right thumb problem was not work-related.

Finally, Appellant was examined on January 25–26, 2000, by Dr. Granacher, a psychiatrist. After reviewing the medical records and his exam notes, Dr. Granacher concluded that, although Appellant may have suffered a temporary concussion, he did not sustain a traumatic brain injury and that his level of intellectual functioning was not affected by the accident. He explained that the pattern of global cognitive deficits and the fact that Appellant's complaints of cognitive problems developed over time both were inconsistent with a significant brain injury.

Appellant testified that he had been employed as a heavy equipment operator since 1966 and that he knew that all heavy equipment, including D–3 bulldozers, are required to be equipped with a seat belt. Appellant testified that the job foreman

held a safety meeting every Monday morning and always advised all of the bulldozer operators that they were required to wear hard hats, safety glasses, and seat belts while operating their equipment. Appellant claimed that he reported the broken seat belt to the project manager on several occasions and made several requests of the company mechanics to repair the seat belt, all to no avail. The seat belt was still inoperable at the time of his accident and injury.

Characterizing the matter as a "close case," the ALJ noted that the Appellant appeared credible with respect to his testimony that his dizziness, headaches, and other symptoms began only after the accident. He also appeared to have a "good to excellent" memory and was able to express himself adequately. The ALJ concluded, however, that he had failed to meet his burden of proving a traumatic brain injury, noting that, although he appeared to have sustained a mild concussion with some temporary symptoms, there was grave doubt that the global cognitive deficits or complaints of dizziness and blurred vision were caused by the work-related accident. Furthermore, although anxiety seemed to play a role in his problems, there was no convincing evidence that his anxiety attacks were caused by the accident. On the other hand, the ALJ was persuaded by testimony from Appellant's family physician, Dr. Aaron, that he had sustained musculoligamentous injuries that caused a 15% impairment. The ALJ was also persuaded that Appellant could not return to his work as a bulldozer operator and determined, therefore, that he was entitled to income benefits that were enhanced by 50%. Finally, the ALJ noted that Appellant had failed to identify a specific statute or regulation that required operative seat belts on D–3 bulldozers and concluded that he had, thus, failed to prove an alleged

safety violation warranting application of KRS 342.165(1).

In a petition for reconsideration, Appellant reargued the merits of the brain injury claim. He also pointed out that he qualified as an expert in the operation of heavy equipment and that his testimony that seat belts were required on all heavy equipment vehicles was uncontradicted. The employer responded that "KRS 342.165 requires *evidence of a failure to comply* with a 'specific statute or lawful administrative regulation'" and that "Plaintiff failed to produce any *evidence that there was a specific statute or safety regulation* requiring seat belts in a bulldozer [such as] the one operated by Plaintiff." (Emphasis added.) Appellant filed a reply brief, specifically citing 803 KAR 2:015 § 4(2)(k). However, because KRS 342.281 does not provide for a reply to a response to a petition for reconsideration, the ALJ declined to consider the pleading or its citation to the safety regulation. The ALJ also opined that the citation to the regulation was "new evidence" which could not be introduced at the reconsideration stage of a workers' compensation proceeding. On appeal, the Board held that it is "not fair" to the employer, "[n]or is it fair to the ALJ," to wait until the reconsideration stage to cite for the first time the safety regulation claimed to have been violated. The Court of Appeals agreed, and the upshot is that Appellant's claim of a violation of a safety regulation has never been addressed on the merits at any stage of this litigation.

 It is elementary that a claimant bears the burden of proof and risk of nonpersuasion before the fact-finder with regard to every element of the claim. *Roark v. Alva Coal Corporation,* Ky., 371 S.W.2d 856, 857 (1963); *Wolf Creek Collieries v. Crum,* Ky.App., 673 S.W.2d 735, 736 (1984); *Snawder v. Stice,* Ky.App., 576

S.W.2d 276, 279 (1979). Although KRS 342.285 permits the appeal of the ALJ's decision to the Board, it provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." KRS 342.290 limits the scope of review by the Court of Appeals to that of the Board and also to errors of law arising before the Board.

This Court has construed KRS 342.285 to mean that the fact-finder, rather than the reviewing court, has the sole discretion to determine the quality, character, and substance of evidence, *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418, 419 (1985); that an ALJ, as fact-finder, may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof, *Caudill v. Maloney's Discount Stores*, Ky., 560 S.W.2d 15, 16 (1977); and that where the party with the burden of proof is successful before the ALJ, the issue on appeal is whether substantial evidence supported the ALJ's conclusion. *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Co.*, Ky., 474 S.W.2d 367, 369 (1971). Although a party may note evidence that would have supported a conclusion that is contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal. *McCloud v. Beth–Elkhorn Corp.*, Ky., 514 S.W.2d 46, 47 (1974).

Although there was evidence that Appellant was permanently disabled by a work-related traumatic brain injury, there was also evidence to the contrary. Having reviewed the conflicting evidence and the arguments of the parties, we are not persuaded that the ALJ overlooked or misunderstood any relevant evidence with respect to that issue or that the ALJ's view of the evidence was erroneous as a matter of law.

■ However, the ALJ made no findings of fact with respect to whether the accident was caused in any degree by the intentional failure of the employer to equip Appellant's bulldozer with an operable seat belt. She only found that Appellant had failed to cite the particular safety regulation alleged to have been violated. Appellant did, in fact, testify that there were safety regulations that required bulldozers to be equipped with seat belts and that the bulldozer assigned to him was not equipped with an operable seat belt as required by those regulations. KRS 342.165(1) authorizes a 15% increase in compensation:

> If an accident is caused in any degree by the intentional failure of the employer to comply with any specific statute or lawful administrative regulation made thereunder, communicated to the employer and relative to installation or maintenance of safety appliances or methods....

■ Appellant's testimony that he was injured when he was thrown out of his seat and struck his head against the steel roll bar would support a finding that the accident was caused in some degree by the absence of the seat belt. The ALJ did not dismiss this aspect of Appellant's claim because of a failure to prove the necessary facts to support it but because he failed to cite the specific safety regulation applicable to those facts. That is not a failure to prove facts but a failure to cite legal authority applicable to the facts proven. Unfortunately, this is not a rare occurrence in

any type of litigation. Ironically, the regulation that Appellant finally did cite in his reply to the employer's response to his petition for reconsideration, as well as in all of his appellate briefs, is not the regulation that applies to the facts proven in this case. 803 KAR 2:015 § 4(2)(a), provides that the requirements of that section (including the cited regulation, § (4)(2)(k)) "do not apply to equipment for which rules are prescribed in subsection (3) of this section." 803 KAR 2:015 § 4(3)(a) provides that the provisions of that subsection apply to, *inter alia,* bulldozers (bulldozers with caterpillar treads, not bulldozers with wheels, which are covered under 803 KAR 2:015 § 5(1)(a)). 803 KAR 2:015 § 4(3)(b) requires that "[e]ach employer shall insure safe seating with seat belts on all equipment covered by this section...." The only exceptions pertain to equipment designed only for stand-up operation, *id.,* § 4(3)(c) and equipment that *does not* have a rollover protection structure or adequate canopy protection. *Id.,* § 4(3)(d). However, Appellant's failure to provide the correct legal citation to support his claim, where accurate research reveals the existence of such legal support, does not mean that his claim must fail, for ALJ's, workers' compensation board members, judges and justices are presumed to know the law and are charged with its proper application.

There are two schools of thought as to what policy an appellate court should follow in such instances—which are, we might add, not at all rare. One view is that when a party fails to argue a theory on which he is entitled to win he should simply lose, the courts having enough to do without practicing lawyers' cases. On the other hand, much bad law will go into the books (more, that is, than is there already) if courts confine their analyses of cases to the theories presented in the briefs. It is probable that

in well over 50% of the cases coming before it an appellate court will size up the dispositive logic of a controversy differently from the way in which the opposing parties have conceived it. For the sake of the litigants, who have some right, it seems to us, to expect the courts to assume a full share of responsibility for seeing that the controversy is correctly determined, we are of the opinion that insofar as the pleadings, the evidence, the rules of procedure and the principles of law permit, an appellate court should resolve cases on their merits, aided by but not necessarily restricted to the arguments of counsel.

*First Nat'l Bank of Louisville v. Progressive Cas. Ins. Co.,* Ky., 517 S.W.2d 226, 230 (1974). In other words, applicable legal authority is not evidence and can be resorted to at any stage of the proceedings whether cited by the litigants or simply applied, *sua sponte,* by the adjudicator(s). Nor is legal research a matter of judicial notice, for the issue is one of law, not evidence. Commentary to KRE 201, Evidence Rules Study Committee, Final Draft (1989); FRE 201 Advisory Committee Note (1972).

Accordingly, the decision of the Court of Appeals is affirmed with respect to Appellant's claim for total disability benefits and reversed as to Appellant's claim for a 15% penalty, and this case is remanded to the ALJ for a determination of whether the facts of this case prove an intentional failure on the part of the employer to comply with 803 KAR 2:015 § 4(3)(b) so as to authorize a 15% enhancement of the award pursuant to KRS 342.165(1).

All concur.