Doyle CARNES, Jr., Appellant,

v.

PARTON BROTHERS CONTRACTING, INC.; Backfield Coal Co.; and Workers' Compensation Board, Appellees.

No. 2004–CA–002267–WC.

Court of Appeals of Kentucky.

Aug. 19, 2005.

---

10. CR 73.02(1)(e).

11. CR 73.02(1)(a).

Susan Turner Landis, Harlan, KY, for appellant.

William E. Brown, II, Lexington, KY, for appellees.

Before BARBER and JOHNSON, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

JOHNSON, Judge.

Doyle Carnes, Jr. has petitioned for review from an opinion of the Workers' Compensation Board entered on October 8, 2004, which vacated and remanded the Chief Administrative Law Judge's opinion and award rendered on April 6, 2004, which found Carnes to be permanently and totally disabled. Having concluded that the Board misapplied the relevant statutory provisions and exceeded its authority on appellate review, we reverse and remand this matter to the Board to reinstate the CALJ's opinion and award.

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Carnes was born on October 27, 1969. He is a high school graduate, and received some vocational training in diesel mechanics while in high school. Carnes never used these skills in any job. Following high school, Carnes worked as a cook at a McDonald's restaurant for approximately one year. After working at McDonald's, Carnes worked as an underground coal miner from 1988 to 2002, with the exception of approximately one year of employment with a construction company in 1998 and 1999.[2] While in the coal industry, Carnes worked primarily as a continuous mine operator.

Carnes suffered at least three work-related injuries before the injury which gave rise to the claim on review. Carnes's right shoulder was injured on October 18, 1993, while he was working for Crockett Collieries when draw rock fell on him. No workers' compensation claim was filed and the problem resolved itself within a few days. Then, on December 12, 1996, Carnes's left foot was struck by draw rock, causing temporary nerve damage. He filed a workers' compensation claim, which was settled for the lump sum of $15,000.00 based on a 7.5% impairment rating. Carnes also suffered an injury in January 2001 when he was struck in the shoulders and in the head by a piece of draw rock, just two days after beginning work for Jack Rock Coal. He reported pain in his head, shoulders, and mid-back, and ringing in his ears. He was hospitalized, but did not have surgery. With continuing pain and ringing in his ears, Carnes returned to work with the help of pain medication and monthly doctor visits. He filed a workers' compensation complaint and received an award and a settlement for his medical expenses.

After the January 2001 injury, Carnes was employed with Parton Brothers Contracting, Inc. on July 17, 2001, and he was injured on October 10, 2002,[3] while dragging a five-gallon can of gear oil, 700 to 800 feet, in an underground mine.[4] Upon completing the task, he immediately felt a severe throbbing and burning with a stinging sensation down his left leg and pain in the center of his back just above his belt-line. Carnes drove himself to the hospital where he was treated at the emergency room. He was unable to return to work[5] and filed his Application for Resolution of Injury Claim on July 21, 2003.[6]

On February 6, 2004, an evidentiary hearing was held before the CALJ. Evidence presented included Carnes's deposition and live testimony, and medical evidence from Dr. James Bean, Dr. David Muffly, and Dr. Christopher Stephens. Carnes testified in his deposition that he suffers from severe lower back pain, as well as numbness in his left leg, and muscle spasms in his calf muscles. He also testified that he suffers from temporary

2. Carnes testified that he returned to coal mining because he did not want to do the traveling required for construction work.

3. During this time, Carnes worked 48 hours per week.

4. Carnes was manually moving the can of oil because the equipment normally used was broken.

5. Dr. James Bean's medical report indicated that Carnes was off work for 18 days, returned to work, but pain reoccurred and he did not return to work at Parton Brothers. Later, Carnes attempted to return to mining work with a different employer for five to six days, but could not continue because of the injury, i.e., severe chronic back and left leg pain.

6. Carnes also filed a black lung claim which is not a part of this case. He also applied in May 2003 for Social Security benefits, but was denied. The case was on appeal at the time of the hearing before the CALJ.

paralysis in his lower left leg from time to time. The numbness in his leg comes and goes, but he described the back pain as a constant ache. Due to his pain, Carnes engages in very few daily activities, but stays in bed most of the time, while applying a heating pad. In a 12–hour period, Carnes spends approximately six to eight hours lying down, one hour standing, and one hour sitting. He stated that he is able to do some yard work on a riding lawn mower from time to time, and that he does laundry, but only what he has to, and he sometimes goes to the grocery store. His family and friends perform the housekeeping tasks that he cannot do on his own. He testified that he can no longer engage in the hobbies he enjoyed before his low-back injury, including hunting and fishing. He also stated that he only drives when he has to, and only 10 to 15 miles at a time, because he cannot sit for longer periods of time.

On February 6, 2004, Carnes testified before the CALJ regarding his injury, stating that he is in constant pain, and that he suffers from paralysis in his left leg several days out of the month. He sometimes uses a cane to assist him with walking. He is currently on Percocet, a muscle relaxer, and has recently been taking sleeping pills and blood pressure medication as needed. He has been bedridden by his pain for up to nine consecutive days. He is most comfortable lying flat on his back. He has received medical care for his pain, including hospitalization, emergency room treatment,[7] injections of medication, as well as daily medication. He also testified that he has discussed the options of surgery with Dr. Stephens, but that he has not undergone the surgery because of the risks and the somewhat minimal relief that Dr. Stephens told him he could expect from surgery.

Carnes also testified that his pain is worsening and that he could not do any type of work as of the date of the hearing. He had not looked for work since the date he gave his deposition. The CALJ specifically asked Carnes about his educational and vocational training. Carnes testified that due to his condition he did not think he could perform any job.

Carnes submitted in support of his claim a Form 107 dated May 10, 2003, along with Dr. Bean's report dated May 10, 2003. Dr. Bean indicated in his report that Carnes's straight-leg-raising test was positive on the left, but he had a normal motor sensory reflex exam. After reviewing an MRI dated December 12, 2002, Dr. Bean reported that Carnes suffered from degenerative disc disease, lumbar sprain, and a central disc bulge at the L4–5 and L5–S1 levels. It was Dr. Bean's opinion that these conditions were due to the injury Carnes sustained in 2002, and that Carnes did not have an active impairment before this injury. He assigned Carnes an 8% functional impairment rating in accordance with the AMA *Guides to the Evaluation of Permanent Impairment.* Dr. Bean recommended that Carnes lift no more than 30 to 40 pounds, and avoid any activities which required continuous bending or stooping. He further opined that Carnes was physically unable to return to the type of work he performed prior to and at the time of his injury.

Dr. Muffly, an orthopedic surgeon, testified by deposition dated November 12, 2003. Dr. Muffly had treated Carnes for both his 1997 foot injury and his 2001 shoulder injury.[8] He evaluated Carnes on

7. He testified that he had been to the emergency room three times since he gave his deposition in October, due to pain related to the injury.

8. Dr. Muffly stated that his testimony related solely to the orthopedic problems, not the foot injury.

May 19, 2003, after he complained of low-back pain as a result of the October 10, 2002, injury. He testified that prior to this date, Carnes had never complained of pain in his lumbar spine and had no history of lumbar problems. He reported that Carnes's straight-leg-raising test was positive at 80 degrees in both the seated and supine positions and that Carnes walked without a limp, but had stiffness in the low back with change of position and tenderness in the low back. Dr. Muffly also reviewed the MRI scan dated December 12, 2002, and agreed with Dr. Bean that the MRI showed a moderate disc bulge at the L4–5 and the L5–S1 levels. Dr. Muffly's diagnosis was lumbar strain, disc bulging of the lower two lumbar levels, and degenerative changes. He attributed these conditions to Carnes's October 2002 injury, and estimated Carnes's functional impairment rating to be 8% based on the AMA *Guides.* Dr. Muffly recommended that Carnes lift no more than 30 pounds, do only minimal bending and stooping, and change positions every 30 to 60 minutes. Dr. Muffly testified that it was within reasonable medical probability that the restrictions would be permanent.

Dr. Muffly testified that, following his May 19, 2003, evaluation of Carnes, he was able to review additional medical records, including an MRI scan of Carnes's lumbar spine taken on May 29, 2003. He stated that it was his opinion that the May 29, 2003, MRI showed a progression of Carnes's disc injury, including a disc protrusion at the L4–5 level, and disc herniation at L5–S1 level, and that the injury was more significant than was diagnosed

by the first MRI scan. Dr. Muffly revised his estimation of Carnes's impairment level to 10% and revised his recommendation to restrict Carnes's lifting to less than 20 pounds. He stated that Carnes should only bend or stoop one to two hours per day, changing positions at least every 30 minutes, including lying down. Dr. Muffly testified that Carnes would continue to suffer from chronic pain, and that he would suffer from "flare-ups," which would render him bedridden or even require hospitalization. He also stated that he believed Carnes's medical condition would slowly worsen over time, as it appeared to be worsening every five months between MRI scans. He stated that Carnes needed to have regular doctor visits and additional testing, medication, and possibly future surgical treatment. He testified that combining the effect of Carnes's prior neck injury[9] and the low-back injury, Carnes would be limited to less than sedentary work, because he should lift less than ten pounds, could not stand or sit for even three hours in an eight-hour workday, and would have difficulty concentrating. He also testified that Carnes would be slower at performing daily activities.

The medical report of Dr. Stephens was also introduced. Dr. Stephens evaluated Carnes on November 21, 2003, and also reviewed Carnes's treatment records[10] and the two MRI scans from December 12, 2002, and May 29, 2003. He stated that Carnes's straight-leg-raising test was positive on the left, he had a three-quarters inch atrophy on his left calf, and that he had decreased left ankle-jerk reflex. Dr. Stephens agreed with earlier conclusions

9. Dr. Muffly was referring to the injury that occurred in January 2001, which was work-related, and the Board acknowledged that it could be considered in determining whether the October 2002 low-back injury caused Carnes to be totally disabled. *See* KRS 342.730(1)(a).

10. Dr. Stephens reviewed the records of Dr. Bean, Dr. Muffly, Dr. Zerga, and Dr. Oculam. The record does not indicate the first names of Dr. Zerga or Dr. Oculam.

that the December 12, 2002, MRI showed degenerative changes at the L4–5 and the L5–S1 levels with bulging. He also concluded that the May 29, 2003, MRI showed a moderately large disc herniation at the L5–S1 level. Dr. Stephens diagnosed Carnes with left lumbar radiculopathy with neurologic deficit secondary to lumbar disc herniation. Dr. Stephens believed that surgery was an option for Carnes to relieve the pain in his left leg, but the report revealed that Dr. Stephens did not believe surgery would help Carnes's back pain, nor significantly improve his functionality.

Dr. Stephens found that without surgery, Carnes had reached maximum medical improvement, and estimated a 10% functional impairment rating. He recommended Carnes lift repetitively no more than 30 pounds, and that he refrain from repetitive bending, stooping, kneeling, and crawling. Dr. Stephens stated he did not believe any of Carnes's "current complaints" to be related to his January 2001 injury. He also opined that Carnes did not retain the capacity to return to the type of work he was performing prior to and at the time of his injury.

After examining the evidence, the CALJ entered her opinion on April 6, 2004, finding Carnes to be permanently and totally disabled, with a 10% functional impairment rating. The CALJ observed that Carnes was 34 years old with a high school education. While in high school, he received some vocational training in diesel mechanics. The CALJ also pointed out that Carnes had worked as an underground coal miner for essentially his entire adult life, and that he had testified that he no longer had the physical capacity to return to any type of work he had performed in the past. The CALJ found that Carnes continued to have low-back pain, radiating into his left leg, and continued to receive conservative medical treatment. The CALJ also found Carnes to be a "highly credible witness," and that his testimony was consistent with his demeanor during the hearing. The CALJ took note of the findings from the three treating physicians, stating that the evidence had a "remarkable degree of similarity." Further, the CALJ noted that Carnes had had at least two prior work-related injuries, but that Carnes was able to continue working on a regular basis until the low-back injury. The CALJ then set out in detail the medical conclusions of the three physicians that were placed into evidence. Based on the totality of the evidence and based on the law of KRS 342.0011(11) and *Ira A. Watson Department Store v. Hamilton,*[11] the CALJ found that Carnes had a 10% functional impairment as a result of the October 10, 2002, injury, and that as a result of that injury he is now permanently and totally disabled.

On April 20, 2004, Parton Brothers filed a petition for reconsideration in which it argued that the CALJ's finding of permanent total disability was erroneous and not supported by substantial evidence. Parton Brothers further argued that the CALJ should have at least ordered Carnes to undergo vocational rehabilitation pursuant to KRS 342.710.[12] The CALJ overruled the petition for reconsideration on May 14, 2004, and Parton Brothers appealed to the Board.

In its appeal to the Board, Parton Brothers argued that Carnes was able to perform light duty and sedentary work, and pointed out that none of the physicians had opined that Carnes was permanently and totally disabled. Thus, Parton Broth-

---

11. 34 S.W.3d 48 (Ky.2000).

12. This was the first instance in which vocational rehabilitation was discussed in the course of the claim for benefits.

ers argued that the CALJ's opinion was *not supported by* "substantial evidence of probative value." Parton Brothers also relied on the fact that Dr. Muffly's revised opinion relied on both Carnes's earlier injuries and the lumbar injury sustained on October 10, 2002. Parton Brothers argued that it was erroneous for the CALJ to rely upon Carnes's testimony that he was unable to work, and claimed that the physicians' testimony was that Carnes "does retain the capacity to be gainfully employed within the medical restrictions imposed on him." Further, it argued that the modifiers for impairment calculations in KRS 342.730 should have been considered. Parton Brothers also argued that, at a minimum, the CALJ should have ordered vocational rehabilitation pursuant to KRS 342.710. Parton Brothers further claimed that the CALJ could not have found Carnes permanently and totally disabled even under the strictest restrictions in the medical evidence and that the CALJ should have ordered vocational rehabilitation pursuant to KRS 342.710.

In an opinion entered October 8, 2004, the Board vacated and remanded the CALJ's decision, with instructions that the CALJ "expressly state whether Carnes has a complete and permanent inability to perform any type of work as a result of his lower back injury." The Board acknowledged that the issue of vocational rehabilitation was "imperfectly preserved" and raised by Parton Brothers only on its petition for reconsideration. However, the Board instructed the CALJ on remand to grant the parties a reasonable time to address the appropriateness of a vocational rehabilitation evaluation pursuant to KRS 342.710(3). The CALJ was instructed that if either party were to request such an evaluation, "the CALJ shall thereafter follow the procedure outlined in KRS 342.710(3)." The Board stated that it had authority to remand this issue to the CALJ under KRS 342.285(2)(c), since the claim was being remanded on a "related issue." This petition for review followed.

Carnes argues to this Court that (1) the Board abused its discretion in vacating and remanding the decision of the CALJ, and (2) the Board abused its discretion in ordering the CALJ to allow consideration of vocational rehabilitation. Parton Brothers states in response that Carnes's arguments are "based upon a misapplication of the case law and statutes."

■■■ The ALJ is the finder of fact and has the sole authority "to determine the quality, character, and substance of all the evidence."[13] The ALJ alone is to judge the "weight, credibility, and inferences" to be drawn from the evidence,[14] and is therefore permitted to believe some evidence and to disbelieve other evidence.[15] Further, as fact-finder, the ALJ may draw on either of two reasonable inferences.[16] On appeal, "[n]o new evidence may be introduced before the Board,[17] and the Board

---

**13.** *Garrett Mining Co. v. Nye,* 122 S.W.3d 513, 518 (Ky.2003) (citing *Square D. Co. v. Tipton,* 862 S.W.2d 308, 309 (Ky.1993); and *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418, 419 (Ky.1985)).

**14.** *Miller v. East Kentucky Beverage/Pepsico, Inc.,* 951 S.W.2d 329, 331 (Ky.1997).

**15.** *Burton v. Foster Wheeler Corp.,* 72 S.W.3d 925, 929 (Ky.2002) (citing *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.

1977)). *See also Pruitt v. Bugg Brothers,* 547 S.W.2d 123, 124 (Ky.1977).

**16.** *Jackson v. General Refractories Co.,* 581 S.W.2d 10 (Ky.1979).

**17.** Parton Brothers argues that the Board did not examine new evidence or substitute its opinion for the ALJ's opinion. If it had done so, it would have ordered the ALJ to enter an award based upon permanent partial disability.

may not substitute its judgment for that of the ALJ concerning the weight of evidence on questions of fact." [18]

Upon the initial reading of the Board's opinion, one error is obvious. The Board remanded the case to the CALJ because the CALJ did not "expressly state that Carnes has a complete and permanent inability to perform any type of work as a result of his lower back injury." [19] Upon reading the CALJ's opinion, we conclude that the Board overlooked the CALJ's statement on page seven of her opinion that "the plaintiff is now permanently and totally disabled as a result of this injury pursuant to KRS 342.0011(11) and *Ira A. Watson Department Store v. Hamilton,* 34 S.W.3d 48 (Ky.2000)." In fact, the CALJ had noted earlier in her opinion that the real issue was "whether the plaintiff's functional impairment and restrictions are so great that he now has a complete and permanent inability to perform any type of work as a result of this injury. KRS 342.0011(11)(c)."

KRS 342.0011(11)(c) defines permanent partial disability as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" The Board stated that the CALJ did not recognize "the distinction between an inability to perform the type of work performed at the time of injury and a complete and permanent inability to perform any type of work[.]" However, the ALJ demonstrated familiarity with and understanding of the statute, and how it has been interpreted by our Supreme Court in *Hamilton.* After citing Carnes's credibility and the opinions of the physicians, the CALJ went on to conclude that Carnes's injury resulted in him being permanently and totally disabled.

The Board then stated that the CALJ's ruling is unclear because of Carnes's testimony that "he no longer has the physical capacity to return to any type of work that he has done in the past." The Board stated that this testimony could have required an award of permanent partial disability benefits tripled pursuant to KRS 342.730(1)(c)1.[20] Further, the Board stated that none of the medical evidence provided by the three physicians indicated why an award of permanent total disability is warranted. If the CALJ had relied on any single piece of evidence, rather than a totality of the evidence in the record, the Board's rationale would be proper; however, that is not what occurred. The CALJ specifically acknowledged that it was her "responsibility . . . to look at the totality of lay and medical evidence contained in the record . . . in making the determination of

---

18. *Smith v. Dixie Fuel Co.,* 900 S.W.2d 609, 612 (Ky.1995). *See also* KRS 342.285(2).

19. The Board remanded "for additional fact finding . . . to ensure that the CALJ's permanent total disability award is based on a correct understanding of the evidence and to meaningfully inform appellate review of the issue." The Board cited *Cook v. Paducah Recapping Service,* 694 S.W.2d 684 (Ky.1985) and *Shields v. Pittsburg & Midway Coal Mining Co.,* 634 S.W.2d 440 (Ky.App.1982). However, those cases involved highly controverted evidence, and the lower decisions were insufficiently clear for the reviewing body to determine what weight, if any, the fact-finder had given to particular evidence. As laid out in *Shields,* the rule is that the fact-finder is required to "support its conclusions with facts drawn from the evidence in each case so that both sides may be dealt with fairly and be properly apprised of the basis for the decision." *Id.* at 444.

20. KRS 342.730(1)(c)1 states that it applies "[i]f, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury[.]"

whether [Carnes] has a total and permanent occupational disability."

■ The Board vacated and remanded the decision of the CALJ, stating that the evidence adduced by the CALJ "does not lead ineluctably [21] to an award of permanent total disability." However, this is not the proper standard of review. Where a claimant "is successful before the ALJ, the issue on appeal [to the Board] is whether substantial evidence supported the ALJ's conclusion." [22] Substantial evidence is defined as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]" [citation omitted].[23] The Board should have determined if there was substantial evidence to support the CALJ's conclusions, and if so, then it was the Board's duty to affirm. The evidence need not lead inescapably to the CALJ's ultimate finding; rather that finding need only be supported by substantial evidence and authorized by the law. The fact that the evidence in this case does not "lead ineluctably" to the CALJ's conclusion is of little consequence, as there was substantial evidence to support the CALJ's award.

■ The CALJ noted that Carnes is a young worker, a high school graduate, and that he has some vocational training. The CALJ determined that Carnes was a highly credible witness. The CALJ further pointed out the consistency of the evidence from the physicians, and pointed out that Carnes's symptoms were uncontroverted. She noted that Dr. Muffly had testified that Carnes was now limited to less than sedentary work because of the low-back injury and the earlier neck injury. Carnes testified at the hearing before the CALJ that he had been bedridden for as many as nine days, that the pain was not getting better, but was worsening, and that he would be unable to return to any kind of work. "[A] worker is not required to be homebound in order to be found to be totally occupationally disabled." [24] We conclude that this evidence in its totality was substantial to support the CALJ's finding that Carnes is totally and permanently disabled.

■ Because we conclude that the CALJ's award was based on substantial evidence and authorized by law, and that remand to the CALJ by the Board was erroneous, the second issue raised by Carnes is moot. However, we will briefly discuss it. We conclude that it was improper for the Board to instruct the CALJ upon remand to consider vocational rehabilitation. KRS 342. 710(3) provides, in relevant part, as follows:

> The administrative law judge on his own motion, or upon application of any party or carrier, after affording the parties an opportunity to be heard, *may* refer the employee to a qualified physician or facility for evaluation of the practicability of, need for, and kind of service, treatment, or training necessary and appropriate to render him fit for remunerative occupation [emphasis added].

In statutory interpretation and construc-

21. Ineluctably is defined as "not to be avoided or overcome; inescapable." Webster II New College Dictionary, p. 566 (2001).

22. *Burton*, 72 S.W.3d at 929 (citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)). *See also Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky.App.1984).

23. *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky.1971).

24. *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky.2001) (citing *Osborne v. Johnson*, 432 S.W.2d 800, 803 (Ky. App.1968)).

tion, " '[m]ay' is permissive[,]" [25] while " '[s]hall' is mandatory[.]" [26] We conclude that the use of the word "may" in KRS 342.710(3) places vocational rehabilitation entirely within the discretion of the CALJ. Furthermore, neither party requested a vocational rehabilitation evaluation when the matter was before the CALJ.[27] The Board, citing its authority under KRS 342.285(2)(c) to ensure that a decision is in conformity with the provisions of KRS chapter 342, determined that it was proper to instruct the CALJ to consider vocational rehabilitation, because of the purpose of vocational restoration embodied in KRS 342.710(1).[28] However, KRS 342.710(3)[29] places the consideration of vocational rehabilitation within the discretion of the CALJ. The effect of the Board's opinion is to second-guess the CALJ's exercise of that discretion. Such an approach would place a duty upon an ALJ to order a vocational rehabilitation evaluation on its own motion in cases where the Board, in retrospect, determines that a vocational rehabilitation evaluation would be appropriate. We do not agree with this application of the statute and conclude that the Board abused its discretion in ordering the CALJ to consider vocational rehabilitation.

▮ We conclude that the CALJ's conclusion that Carnes is now permanently and totally disabled as a result of his low-back injury is supported by substantial evidence, and that a remand for more specific findings was inappropriate, as the findings of fact were sufficient to enable a meaningful review. We also conclude that the Board abused its discretion by ordering the CALJ to consider vocational rehabilitation, as it was within the discretion of the CALJ, since neither party requested such evaluation.

For the foregoing reasons, the Board's opinion is reversed, and this matter is remanded to the Board for reinstatement of the opinion and order of the CALJ.

ALL CONCUR.

25. KRS 446.010(20).

26. KRS 446.010(29).

27. In its brief to the CALJ, Parton Brothers did argue that Carnes was retrainable. However, only in its petition for reconsideration, did it argue that Carnes had "transferable job skills" and that CALJ should have ordered vocational rehabilitation pursuant to KRS 342.710.

28. KRS 342.710(1) states as follows:
   One of the primary purposes of this chapter shall be restoration of the injured employee to gainful employment, and preference shall be given to returning the employee to employment with the same employer or to the same or similar employment.
   See *Whittaker v. Reeder*, 30 S.W.3d 138, 144 (Ky.2000).

29. KRS 342.710(3) also states in part that an employee, who cannot perform work which he is trained to do, is entitled to vocational rehabilitation services and the ALJ shall determine whether such services have been offered and accepted. Carnes testified that he could not perform any type of work. Further, with testimony from both Carnes and Dr. Muffly that Carnes's condition was worsening and that he was at times bedridden, there was no reason for the CALJ to further inquire about vocational rehabilitative services.