RENDERED:  OCTOBER 14, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0930-WC

REDWOOD HOLDINGS, LLC, D/B/A
FRANKFORT CARE AND REHABILITATION                    APPELLANT


PETITION FOR REVIEW OF A DECISION
v.                OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-18-64086


NICOLE MANGO; HONORABLE JOHN
H. MCCRACKEN, ADMINISTRATIVE
LAW JUDGE; AND WORKERS' COMPENSATION
BOARD                                                       APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, JONES, AND MAZE, JUDGES.

MAZE, JUDGE:  Redwood Holdings, LLC d/b/a Frankfort Care and

Rehabilitation (Redwood) petitions for review from an opinion of the Workers

Compensation Board upholding the Administrative Law Judge's (ALJ) award of

benefits to Nicole Mango (Mango).  Redwood argues that there was no evidence to support the ALJ's finding that Mango is totally and permanently disabled, the ALJ improperly relied on Mango's lay testimony about her mental impairment, and the ALJ failed to properly address the substantial evidence supporting its position that Mango retains the ability to work in a sedentary position.  We agree with the Board that the ALJ's findings were sufficient and that the ALJ did not clearly err in finding Mango to be totally disabled.  Hence, we affirm.

Throughout her career, Mango has worked in multiple nursing positions, as well as jobs as a cashier, waitress, and pharmacy technician.  She reported prior, temporary injuries to her right foot and right arm, but these conditions had completely resolved prior to her employment with Redwood.  Most recently, Mango was employed as a Certified Nurse Assistant (CNA) at Redwood's facility in Frankfort.  Her job duties required physical activity, including bathing, dressing, and feeding residents, as well as dispensing medications.

On May 29, 2018, Mango was nearly finished with passing out medication when the accident occurred.  While she was kneeling to get medication out of the bottom drawer of her medicine cart, a resident tried to get past her in a wheelchair.  The resident ran into the back of Mango's knee and leg.  Her right knee bent to the side, and she fell into the medicine cart, striking her right shoulder

and chest. Despite the incident, Mango completed dispensing the medication, returned the cart, and then notified her supervisor. Ice and Kinesio tape were applied. Mango did not complete her shift and sought medical treatment that day. She was released to return to light-duty work the following day.

Mango suffered two additional work-related injuries. On July 18, 2018, Mango accompanied a patient to a VA emergency room. The patient grabbed her and rocked her back and forth, worsening her right knee pain. She continued to experience swelling and pain in her right foot. On August 7, 2018, Mango slipped and fell in patient vomit. She slid under a bed, striking her right leg directly below the knee. Mango continued to work until September 14, 2018, when her available light-duty work with Redwood expired. She has not worked since that time.

Mango was initially treated by Dr. Andrew Duffee, an orthopedic surgeon. Dr. Duffee stated that she originally sustained a nerve shock in her knee. She went for a second opinion to Dr. Dana Soucy, who recommended surgery. Thereafter, she treated with Dr. Greg Grau. On November 2, 2018, Dr. Grau performed arthroscopic surgery on Mango's knee. Subsequent physical therapy provided some relief, and she underwent a second surgery to her right knee on February 26, 2019. Dr. Grau eventually diagnosed Mango with Complex Regional Pain Syndrome (CRPS).

Mango next treated with Dr. Austin Stone at University of Kentucky (UK) Sports Medicine. Dr. Stone indicated Mango may need additional surgery, but he did not recommend any procedure due to her CRPS. Dr. Stone referred her to Dr. Justin Craig at UK Interventional Pain. She underwent two nerve blocks that provided no benefit. She also underwent unsuccessful trials of a dorsal root ganglion machine and a spinal cord stimulator. In addition, Mango treated with the Cleveland Clinic, where a ketamine infusion was recommended, but she was unable to obtain approval for the procedure. Mango also testified that she has difficulty focusing, and experiences what she characterized as "brain fog" from her medication.

Both Mango and Redwood filed numerous treatment records. Mango also filed a report from Dr. James C. Owen. Dr. Owen diagnosed Mango with CRPS and indicated she may benefit from a dorsal stimulator. He assessed a 35% impairment rating pursuant to the 5th Edition of the American Medical Association *Guides to the Evaluation of Permanent Impairment* (*AMA Guides*). He limited her to sedentary activity.

Dr. Owen performed a supplemental evaluation on March 11, 2020, in response to the opinions expressed by Dr. Gregory Snider, who evaluated Mango at Redwood's request. Dr. Owen amended the impairment rating to 36% pursuant to the *AMA Guides*. Dr. Owen again stated Mango developed CRPS due to her

work injury. He stated she reached maximum medical improvement (MMI) on January 31, 2020. Dr. Owen also opined Mango is unable to return to any productive work, and specifically, cannot return to the type of work performed at the time of the injury. He additionally stated she had no functional impairment prior to her injury date.

The treatment records from Dr. Grau reiterated his prior diagnosis of CRPS. Dr. Grau noted Mango needed ongoing medical treatment, and he indicated that there is a direct relationship between her knee pain and the May 29, 2018, work injury. On June 3, 2019, Dr. Grau noted that Mango had reached MMI, but recommended that Mango continue with pain management treatment.

Dr. Duffee reported that he treated Mango on June 11, 2018, and August 9, 2018. He stated that she had effusion of the right knee joint and a right knee sprain. A right knee MRI revealed chondromalacia but no ligament injury. On August 9, 2018, he noted Mango had some relief from the July 20, 2018, steroid injection, but she had sustained an additional knee injury resulting in marked knee pain and swelling.

Mango underwent a functional capacity evaluation (FCE) at Drayer Physical Therapy on July 29, 2019. Jim Couch, P.T., prepared the report, and noted Mango complained of right knee pain which she rated as seven on a ten-point scale. He stated she could perform sedentary work.

Dr. Stone initially diagnosed Mango with CRPS and arthrofibrosis of the right knee. He subsequently noted Mango's continued complaints of left knee pain. On November 22, 2019, Dr. Stone noted continued problems with right knee pain and CRPS, but he recommended no additional knee surgery. Similarly, Dr. Craig's records diagnosed CRPS related to the May 29, 2018, work injury.

Dr. Mark Etscheidt, Ph.D, performed a behavioral examination at Dr. Craig's request on August 15, 2019. Dr. Etscheidt diagnosed Mango with pain disorder associated with psychological factors of a medical condition. He also diagnosed depression and sleep disturbance associated with her work injury. He additionally noted she is a cigarette smoker.

Dr. Richard Rosenquist with the Cleveland Clinic saw Mango on December 20, 2019, and again on February 24, 2020. He diagnosed CRPS of the right lower extremity, neuritis, and nicotine dependence, and he recommended a ketamine infusion.

Dr. Snider evaluated Mango twice at Redwood's request. He first examined her on January 21, 2020. He stated she had mixed evidence of CRPS, but if she has that condition, it was probably caused by her work injury. He diagnosed Mango with a right knee contusion, possible CRPS, chronic pain, and joint stiffness. He stated the surgeries Dr. Grau performed were reasonable and necessary. He determined Mango reached MMI on June 3, 2019. Dr. Snider

-6-

assessed Mango with a 30% impairment pursuant to the *AMA Guides*. He further opined that Mango can perform sedentary activities but is unable to return to her previous work.

In his deposition on July 23, 2022, Dr. Snider stated that Mango's treatment regime has been reasonable and necessary, but he did not believe she would benefit from additional surgery. He disagreed with the 36% impairment rating assessed by Dr. Owen, but stated that Mango has a poor prognosis, and she needs additional medical management because her CRPS is "not going away." However, he repeated his prior conclusion that Mango can perform sedentary work with limited standing and lifting less than ten pounds.

The remaining medical evidence most agreed on Mango's physical condition but disagreed as to the decree of her impairment. Redwood introduced the April 12, 2018, record from Bernice Sornson, APRN, with Lexington Clinic Beaumont. Mango was seen for problems with recurrent manic episodes from bipolar disorder, generalized anxiety disorder, and insomnia. She was diagnosed with chronic sinusitis, cough, and tobacco use. Dr. Soucy saw Mango for treatment on September 12, 2018, and again on September 28, 2018. Mango reported experiencing problems with her right knee burning, popping, grinding, swelling, and tingling in addition to her pain. Dr. Soucy diagnosed right knee

osteoarthritis and a right knee sprain. On September 28, 2018, Dr. Soucy noted Mango had experienced subsequent injuries and her condition had worsened.

Dr. Soucy stated that Mango could perform sedentary work, with lifting of no more than ten pounds. Redwood also introduced a vocational report from Ron May dated March 15, 2020. Based on Mango's age, education, work experience, and skills, May stated she qualifies to work in numerous jobs in the $20,000 to $65,000 range.

A benefit review conference was held on December 7, 2020. The parties stipulated Mango sustained a work-related injury on May 29, 2018. The issues preserved included permanent income benefits, temporary total disability (TTD) benefits, ability to return to the type of work she performed at the time of injury, vocational rehabilitation, unpaid or contested medical benefits, MMI, proper use of the *AMA Guides*, unreimbursed travel and medical expenses, failure to follow reasonable medical advice, timeliness of bills from providers, and timeliness of mileage reimbursement forms.

Following the conference, the ALJ entered his opinion, award, and order on February 5, 2020. The ALJ found Mango sustained a compensable work-related knee injury that developed into CRPS. Based upon Dr. Grau's testimony, the ALJ found that Mango reached MMI for her right knee on June 3, 2019, but did not reach MMI for her CRPS until February 21, 2020, based on Dr. Craig's

-8-

records. The ALJ noted the 30% impairment rating assessed by Dr. Snider, but he believed the 36% impairment rating assessed by Dr. Owen was most credible. But later in his opinion, the ALJ erroneously referenced the 35% rating initially assessed by Dr. Owen. The ALJ further concluded that Mango is permanently totally disabled and awarded benefits based on that finding.

Redwood filed a petition for reconsideration, arguing that the ALJ erred in calculating the correct benefit rate and in relying on Dr. Owen's impairment rating. Redwood also asserted that the ALJ erred in finding Mango to be totally disabled. The ALJ entered an order on March 11, 2021. The ALJ agreed that he had applied the incorrect benefit rate for Mango's PPD benefits. The ALJ also noted that his prior reference to the 35% impairment rating was a typographical error. However, the ALJ reiterated his prior conclusion that Mango is permanently and totally disabled. The ALJ stated that he did not find that Mango has a mental disability, but merely found that she has difficulty concentrating due to the effects of her injury, which affects her ability to work. The ALJ also determined that, despite the offer by the insurer to modify Mango's vehicle, she testified Dr. Craig indicated she could not drive, and Mango felt her medications made driving unsafe. Finally, the ALJ re-affirmed his prior conclusions about the compensability of Mango's treatment with UK Healthcare and the Cleveland Clinic.

On appeal to the Board, Redwood argued that the evidence did not support Mango's reported "brain fog" or difficulty with memory on concentration. Consequently, Redwood argued that the ALJ erred in taking any mental limitations into consideration in determining she is permanently totally disabled. Redwood also pointed to the reports of Dr. Snider, Dr. Soucy, and the vocational expert that Mango remains able to perform sedentary work.

After summarizing the evidence, the Board found that the ALJ appropriately reviewed the evidence and performed the proper analysis in determining that Mango is permanently totally disabled. The Board noted that, while Dr. Snider assessed a 30% impairment rating, he stated that the *AMA Guides* would permit an impairment range between 20%-40%. The ratings assessed by both Dr. Snider and Dr. Owen fall within this range. The Board further found that the ALJ applied the proper analysis required by *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015), and *Ira A. Watson Department Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000), in determining that Mango is permanently totally disabled.

The Board stated that the ALJ properly considered Mango's testimony about her "brain fog" and difficulty concentrating, even though it did not amount to a mental disability. Finally, the Board found that the ALJ appropriately considered the circumstances and determined that Mango's treatment, bills, and

reimbursements for medical expenses and travel were reasonable, necessary, and compensable.

In this petition for review, Redwood focuses on the sufficiency of the evidence supporting the ALJ's findings that Mango is totally and permanently disabled. It is well-established that a claimant in a workers' compensation claim bears the burden of proving each essential element of his claim. *Burton v. Foster Wheeler Corp.*, 72 S.W.3d 925, 928 (Ky. 2002). As the fact-finder, the ALJ has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Where the evidence is conflicting, the ALJ has the sole authority to believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

"If the party with the burden of proof is successful before the ALJ, the question on appeal is whether the ALJ's opinion was supported by substantial evidence." *GSI Commerce v. Thompson*, 409 S.W.3d 361, 364 (Ky. App. 2012). In order to reverse the decision of the ALJ, it must be shown there was no substantial evidence of probative value to support her decision. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). The function of this Court's review is to correct the Board only where the Court perceives that the Board has overlooked

or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

As an initial matter, we note that the ALJ addressed Redwood's argument about the change in Dr. Owen's impairment rating from 35% to 36%. The ALJ found the latter rating to be more credible, and further stated that his citation to the 35% rating had been a typographical error. Given the acceptable range for Mango's disability and the ALJ's broad discretion, we can find no error in accepting the higher rating, as it was assessed when Mango was closer to MMI.

Redwood mainly argues that the ALJ erred by considering Mango's testimony about her "brain fog" or difficulty concentrating. Redwood correctly notes that ALJs are not permitted to rely on lay testimony, personal experience, and inference to make findings that directly conflict with the medical evidence, except in limited situations, such as matters involving observable causation. *Kingery v. Sumitomo Elec. Wiring*, 481 S.W.3d 492, 496 (Ky. 2015) (citing *Mengel v. Hawaiian-Tropic Northwest and Central Distributors, Inc.*, 618 S.W.2d 184, 187 (Ky. App. 1981)). In the absence of any objective medical evidence showing a mental disability, Redwood contends that Dr. Owen misapplied the *AMA Guides* in determining that Mango is totally and permanently disabled. Redwood also notes that Mango admitted she could engage in sitting, walking, or

standing for brief periods of time, thereby allowing her to perform sedentary work. Consequently, Redwood argues that the ALJ erred in accepting the disability rating assigned by Dr. Owen over that assessed by Dr. Snider.

But as the ALJ correctly noted, "permanent total disability" is defined in Kentucky Revised Statute (KRS) 342.0011(11)(c) as "the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" Work is defined as meaning "providing services to another in return for remuneration on a regular and sustained basis in a competitive economy[.]" KRS 342.0011(34). In *City of Ashland v. Stumbo*, *supra*, the Kentucky Supreme Court laid out a five-step analysis which the ALJ must utilize in determining entitlement to permanent total disability. Initially, the ALJ must determine if the claimant suffered a work-related injury. Second, the ALJ must determine what, if any, impairment rating the claimant has. Third, an ALJ is required to determine that the claimant is unable to perform any type of work. Fourth, the ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is totally and permanently disabled. Finally, the ALJ must determine that the total disability is the result of the work injury. *Stumbo*, 461 S.W.3d at 396-97. In determining whether a worker is totally disabled, an ALJ must consider several factors, including the worker's age,

-13-

education level, vocational skills, medical restrictions, and the likelihood that she can resume some type of "work" under normal employment conditions. *Ira A. Watson Dep't Store*, 34 S.W.3d at 51.

As previously noted, the ALJ stated that he did not find that Mango suffered from a mental disability. Rather, he considered her testimony about her difficulty in concentrating and the effects of her medication as it related to her ability to return to some type of employment. Mango's testimony was competent evidence of her physical condition and of her ability to perform various activities both before and after being injured. *Id.* at 52. The ALJ recognized other medical evidence showing that the effects of Mango's physical injuries cause her mental distress. The ALJ also recognized that, while there was some evidence that Mango could return to some type of work on a limited basis, there was no evidence she could do so on a sustained basis.

Redwood further argues that the ALJ failed to weigh and address the contrary evidence that Mango retained an ability to perform sedentary work on a sustained basis. However, the ALJ addressed that evidence, noting that Couch gave his vocational assessment without personally interviewing her for the opinion. In addition, Couch did not perform any testing to determine if she retained the ability to concentrate or work relatively free from distraction from the symptoms of her physical condition. The ALJ concluded,

The fact that he did not personally interview Mango is of concern to the ALJ as relates to her actual ability to work the jobs he states she is physically capable of working. Mango testified that she is unable to sit or stand for long periods of time, doesn't drive a car, and has difficulty sitting and using a computer. These are all factors that mitigate against her ability to work a job, 40 hours a week, under normal circumstances. This is whether the work is at home, or in a building operated by an employer. She is dependent on others to take her to shop or to her doctor appointments. She does not sleep with anything covering her right leg due to sensitivity issues.

The ALJ understands that Dr. Grau and others, including Dr. Snider, have relied upon the FCE to opine that she is able to physically return to sedentary work. However, given the mental and physical limitations Mango testified she still retains 1 1/2 years after the FCE, the ALJ is not convinced that she is capable of returning to any type of work under normal working conditions for a sustained period of time in a competitive economy. The ALJ relies on Mango and Dr. Owen to find that she does not have the ability to work on a sustained basis, either standing or sitting, under normal work conditions, on a sustained basis.

The ALJ finds that her limited experience to jobs that primarily required her to stand at work, or to physically work with patients, is a significant factor in her inability to return to work. Mango testified that even as a charge or lead nurse, she may have to deal with patients, or assist another nurse with issues at work.

The ALJ relies on Mango and Dr. Owen to find that she is permanently totally disabled from work pursuant to KRS 342.0011(11)(c).

We agree with the Board that the ALJ adequately set forth the basis

for his determination that Mango is totally disabled. We also agree that the ALJ

-15-

properly considered Mango's lay testimony regarding her ability to work on a sustained basis. Indeed, that is the only contested issue remaining for our review. And even on this matter, the medical evidence is uncontested that Mango has severe and permanent disabilities which severely limit her ability to work. Even Dr. Snider conceded that Mango's CRPS was "not going away" and would require extensive pain management for the rest of her life. Although there was contrary evidence which could have supported a finding that Mango retained a limited ability to work, the ALJ's conclusion was supported by adequate findings and was not clearly erroneous.

Accordingly, we affirm the July 16, 2021, opinion of the Board affirming the ALJ's February 5, 2020, opinion and award, as amended by the order entered on March 11, 2021.


ALL CONCUR.


BRIEF FOR APPELLANT:

Christopher M. Mayer
Robert F. Ferreri
Louisville, Kentucky

BRIEF FOR APPELLEE NICOLE MANGO:

Michael F. Eubanks
Richmond, Kentucky