Prescott *v.* Hixon.

## PRESCOTT ET AL. *v.* HIXON.

[No. 2,568.   Filed March 30, 1899.]

BILLS AND NOTES.—*Signatures.*—*Corporations.*—Where a note is signed by an individual maker, with the word "president" or "director" immediately following the name, such words, in the absence of an apparent intention in the body of the instrument to bind the corporation alone, are considered as merely descriptive of the person of the maker, and the note is held to be the obligation of the person so signing it.   *pp. 144, 145.*

EVIDENCE.—*Bills and Notes.*—Parol evidence is not admissible for the purpose of showing what the makers of a promissory note understood to be the legal effect and meaning of the form in which they contracted, where the note is clear and unambiguous in its terms.   *pp. 145, 146.*

REFORMATION OF INSTRUMENTS.—*Bills and Notes.*—Equity will reform a promissory note which in the execution thereof, by the mutual mistake of all of the parties, the word "for" was omitted after the signature of the president of the corporation. *p. 146.*

From the Elkhart Circuit Court. *Reversed.*

*F. E. Baker, C. W. Miller* and *State & Chamberlain,* for appellants.

*W. J. Davis* and *Deahl & Deahl,* for appellee.

HENLEY, J.—Action by appellee Hixon against appellants Prescott and Cordrey, as sole defendants, upon a note, which was in words and figures, as follows:

"$1,064.26.        Middlebury, Ind., Aug. 31, 1893.

"Thirty days from date I promise to pay to the order of Henry W. Hixon, one thousand and sixty-four and 26-100 dollars, negotiable and payable at Farmers' Bank, with interest at the rate of 8 per cent. semiannually until this note is paid,—the interest payable semiannually,—and attorneys' fees. Value received. Without any relief whatever from valuation and appraisement laws. The drawers and indorsers, sureties, and guarantors severally waive presentment for payment, protest, and notice of protest, and nonpayment of this note. The receipt of the interest in advance shall not release or discharge any indorsers, surety, or guarantor on this note.

"[Signed.] O. O. Prescott, Pres. Mid. B. & Cheese Co.; M. A. Cordrey, Sec. Cr. & Cheese Co.

"Indorsements: Guaranty of Directors:

"[Signed.] Jacob Pleiffer, Director M. B. C. Co.; George W. Roth, Director M. B. C. Co.; Christ. S. Messner, Director M. B. C. Co.; Frederick Pleiffer, Director M. B. C. Co.; Samuel J. Miller, Director M. B. C. Co.

"August 31, 1894, received interest for 1 year, $85.13.

"August 31, 1895, received interest for 1 year, $85.15."

To the complaint upon the above note each of said appellants filed his separate answer in one paragraph, and each appellant also filed his separate cross-complaint in one para-

graph against appellees Hixon and the Middlebury Butter &
Cheese Company. The demurrer of the appellee Hixon to
the separate answers of appellants was sustained. The de-
murrer of appellee Hixon to the separate cross-complaints of
appellants was also sustained. The demurrer of the appellee,
the Middlebury Butter & Cheese Company, to the separate
cross-complaints of appellants was sustained. Appellants re-
fused to plead further, and judgment was rendered against
them. The separate answers and cross-complaints filed by
appellants are identical. The facts relied upon are briefly
stated in the answer, which, omitting the formal parts, is as
follows: "The defendant Oramel O. Prescott, for amended
separate answer to the plaintiff's complaint herein, alleges
that the Middlebury Butter and Cheese Company was duly
organized as a corporation under the laws of Indiana in No-
vember, 1891, and ever since has been, and now is, such
corporation; that said corporation provided by its by-laws.
that the officers of said corporation should consist of a pres-
ident, vice-president, secretary, and treasurer, and board of
five directors elected annually by the stockholders of the
company; that it should be the duty of the president to pre-
side at all meetings of the stockholders and directors, and
sign all stock certificates issued by the company, and order
special meetings of the stockholders called whenever, in his
judgment, the interest of the company should demand it;
that the vice-president should perform, in the absence of the
president, all the duties of the president; that it should be the
duty of the secretary to keep a record of all meetings of the
stockholders and directors, take care of all correspondence,
and account for all purchases and sales, and turn over to the
treasurer all moneys received, taking his receipt for the
same, and issue notices for meetings as required; that the
treasurer should receive all money from the secretary, and
receipt for the same, and pay it out on order of the secretary
and signed by the chairman of the board of directors; that
the board of directors should have charge of the financial in-

terests of the company, and have general management of the business, a majority of whom should constitute a quorum to do business; that said corporation from the time of its incorporation to the present time followed out the requirements of said by-laws by electing a president, a vice-president, a secretary and a treasurer, and, in addition thereto, a board of five directors; and said officers performed the duties prescribed by said by-laws, and said board of directors managed and directed the finances and business of the company; that at the time of the execution of the note sued on in this action, and for one year prior thereto, the defendant Prescott was the president of said corporation, the defendant Cordrey was the secretary of said corporation, the plaintiff Hixon was the treasurer of said corporation, and Jacob Pleiffer, George W. Roth, Christian S. Messner, Frederick Pleiffer and Samuel J. Miller were the directors of said corporation; that for at least six or eight months prior to the time of the execution of the note sued on in this action the plaintiff Hixon had paid out for milk and other materials bought and used by said corporation sums of money in advance of the receipt by him, as treasurer, of money from the sale of butter and cheese, and other products of the company, with which to pay for the material and operating expenses of said company whereby the said company would be indebted to the said Hixon from time to time; that at least six months prior to the execution of the note sued on in this action the said Hixon and the said directors agreed that the said Hixon should have eight per cent. interest upon the money so advanced by him in paying the milk bills, and other bills of the company, and that the directors on behalf of the corporation should have monthly settlements with the said Hixon for the purpose of determining the balance, if any, due to the said Hixon, and the amount of money he should advance in the coming month in anticipation of the receipts of the company from the sales of its products, and that the company's note should be given plaintiff therefor;

that for at least six months prior to the execution of the note sued on in this action the said president and secretary of said corporation signed notes of the same tenor and effect, and signed in the same way as the note sued on in this action, and all of said notes were surrendered by the said Hixon upon an accounting had between him and the directors of said company of the amount of money received by him from the sales of the products of the company, and an accounting of the money advanced and to be advanced for the next month by Hixon for the expenses of the company, and upon a new note of the same tenor and signed in the same way as the note surrendered, being executed and delivered to him; that this defendant received no part of the consideration of the note sued upon in this action, but that the entire consideration was received by the said corporation; that this defendant received no part of the consideration of the various said notes of the same tenor and method of signature prior to the note now in suit, but that the entire consideration of said notes was received by the said corporation; that the note now in suit was not, and is not, the individual note of this defendant, nor the joint note of himself and his codefendant, nor the joint note of himself and his codefendant and the said corporation, but that the said note was and is the note of the said corporation alone; that the letters following the name of this defendant in the signature to said note are abbreviations for and were understood by the parties to mean 'President Middlebury Butter and Cheese Company;' that the said plaintiff, Hixon, was present at the various meetings of the board of directors, at which settlements were made of his accounts, as treasurer, between himself and the board of directors, and he knew at the time of the execution of the note in suit, and at the time of the execution of the preceding notes, as above stated, that this defendant was acting, and this defendant was in fact acting on behalf of said corporation, and not otherwise, in the execution of the said various notes including the note in suit; that the payments of interest indorsed on said note were

Prescott *v.* Hixon.

paid to the plaintiff by said corporation, and no part thereof by this defendant or any other person, and plaintiff received each of said notes, including the note in suit, as the sole note of said corporation and not otherwise.

The cross-complaints filed by appellants state the same facts with the additional averments, "That by the mutual oversight and mistake of the plaintiff and defendant, this defendant failed and omitted to insert the word 'for' after the word 'president' in his signature, so that the signature of this defendant was written upon said note as the same now appears thereon, instead of being written O. O. Prescott, president *for* the Middlebury Butter & Cheese Company, as was intended by the parties; that the payments of interest indorsed on said note were paid to the plaintiff by said corporation, and no part thereof by this defendant, or any other person, and plaintiff received said notes, including the note in suit, as the sole note of said corporation and not otherwise." The prayer of the cross-complaint is that the note be reformed by writing the word "for" after the word president in his signature to the note. The action of the lower court in sustaining appellees demurrer to the separate answers and cross-complaints of appellants are the alleged errors assigned, and argued in this court by appellants' counsel.

It is the settled law of this State that where a note is signed by an individual maker with such words as "trustee," "president," "manager," "secretary," immediately following the name, such words are, in the absence of a corporate seal upon the note, or an apparent intention in the body of the instrument to bind the corporation alone, considered as merely descriptive of the person of the maker, and the note is held to be the obligation of the person so signing it. *Hays* v. *Crutcher*, 54 Ind. 260; *Hayes* v. *Matthews*, 63 Ind. 412, 30 Am. R. 226; *McClellan* v. *Robe*, 93 Ind. 298; *Williams* v. *Second Nat. Bank, etc.*, 83 Ind. 237; *Swarts* v. *Cohen*, 11 Ind. App. 20. Tiedeman in his work on Com. Paper (section 123, p. 200), says: "Where the name of the corporation

does not appear either in the body of the instrument or in the signature and the only evidence on the face of the instrument that the person signing does not intend to bind himself personally, is the affix to his signature of some designation of agency, as where he signs "A treasurer, President, or Agent," without stating *for* whom or *for* what company he is acting, the authorities are unanimous in declaring that the instrument creates a personal liability upon the person whose name appears on the paper." At page 201, the same writer says: "And the same rule is followed where the official title and name of the corporation are affixed to the signature, for example, "A. B. President of the Henderson Loan Co."

The foregoing statement of the rule is in accord with our view of the law as it exists in this State. The language of Morris, C., in the case of *Williams* v. *Second Nat. Bank*, 83 Ind. 237, seems to settle this case as to the sufficiency of the answer. In that case it is said: "The note upon its face purports to be the note of the appellants, and not the note of said lodge. The words 'Trustees Perry Lodge No. 37, F. & A. M.,' being descriptive of the persons of the appellants merely. Whether the manner and form of executing the note adopted by the appellants were the proper manner and form of executing the note of the lodge was a question of law which the parties will be conclusively presumed to have known. Knowing the law, they must be held to have known that the note, in the form in which it was executed, purported to be the note of the appellants, and not the note of the lodge. What the parties in fact understood, supposed, or believed as to the legal effect and meaning of the form in which they contracted, is immaterial. The intention which the law imputes to their contract must, in the absence of fraud or mistake of fact, be held to be the intention of the parties. They cannot avoid the contract by averring an intention or purpose opposed to that which the law attaches to

their agreement." Under the law of this State, the note in the case at bar being clear and unambiguous in its terms is certain in its legal effect, and parol evidence is not admissible to change or vary it, and it is immaterial what the parties to the note believed as to the legal effect of the form in which they contracted. The demurrer to the separate answers of appellants was properly sustained.

The cross-complaints present an entirely different question. Courts of equity will reform written instruments in all cases where the mistake is material, and is in the *execution* of such written instrument, but the courts cannot, except in rare cases, grant relief where the mistake was one of law, as when the legal effect of the language used differs from the intention of the parties at the time it was so written and signed. It is said in the case of *Swartz* v. *Cohen*, 11 Ind. App. 20: "Courts of equity will sometimes relieve against mistakes of law and will reform a written instrument so as to make it conform to or speak the intention of the parties. This is particularly true when words are used to express a contract previously made." See *Citizens Nat. Bank* v. *Judy*, 146 Ind. 322, and cases there cited. But in this cause it is not asked in the cross-complaint that the court relieve appellants from a mistake of law. The relief demanded is that a mistake of fact be corrected, the mutual mistake of all the parties in omitting a certain word from the signature to the note. No reason is given, and we think no good reason could be given, why the relief demanded in the prayer of the cross-complaint of each of appellants could not be granted by a court of equity upon the introduction of sufficient evidence to warrant it.

The judgment of the lower court is reversed, with instructions to overrule the demurrer of the appellee Hixon to the cross-complaint of Oramel O. Prescott, to overrule the demurrer of the Middlebury Butter & Cheese Company to the cross-complaint of said Prescott, and to overrule the separate

demurrers of said Hixon and the Middlebury Butter & Cheese Company to the cross-complaint of appellant Moses A. Cordrey.

Black, C. J., dissents.

Wiley, J., absent.