John K. JACKSON, Appellant–Defendant,

v.

LUELLEN FARMS, INC., Appellee–Plaintiff.

No. 05A02–0701–CV–30.

Court of Appeals of Indiana.

Dec. 12, 2007.

James R.A. Dawson, Sommer Barnard PC, Indianapolis, IN, Attorney for Appellant.

Scott E. Shockley, DeFur Voran, LLP, Muncie, IN, Attorney for Appellee.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

Following a bench trial, John Jackson appeals the trial court's judgment in favor of Luellen Farms, Inc. ("LFI"), in the amount of $180,048.12, representing the unpaid balance of a promissory note (the "Note"). Jackson raises four issues, which we consolidate and restate as: (1) whether the trial court erred in finding Jackson personally liable on the Note; (2) whether

the Note fails for lack of consideration; and (3) whether the trial court erred in determining the amount of the judgment. Although we conclude that Jackson's signature evidenced an intent to bind him personally, we also conclude that the Note fails for lack of consideration; we therefore reverse.[1]

*Facts and Procedural History*

Jackson was the owner and president of Hartford Packing Company, Inc., a business that purchased tomatoes from farmers and produced canned tomato products. LFI grew tomatoes, and sold tomatoes to Hartford for more than thirty years. Frequently, Hartford would not pay LFI for the tomatoes on delivery, but would wait until after the first of the year. On two occasions, once in 1997, and once in 1998, LFI extended loans to Hartford. Both times Hartford repaid the loan in full. As of October 1, 1999, Hartford owed LFI $224,656.78 for tomatoes delivered by LFI in 1998 and 1999. On this date, Marvin Luellen, president of LFI, presented the Note in the amount of $225,000 to Jackson to memorialize the amount owed by Hartford to LFI. The complete text of the Note is as follows:

$225,000    Mooreland, Ind., Oct 1, 1999[2]

[Left blank] Days after date we or either of us promise to pay to order of Luellen Farms Inc.[3]

Two Hundred twenty-five Thousand Dollars

And Attorney's Fees. Value received. Without any relief whatever from valuation or appraisement laws, with seven per cent. interest [4] from date until

1. We therefore need not address Jackson's argument relating to the amount of the judgment.

2. The following are handwritten: "225,000"; "Oct 1"; and "99."

3. The Note originally stated, "pay to order of Farmers State Bank, of Mooreland, Indiana." "Farmers State of Bank of Mooreland, Indiana" is crossed out, and "Luellen Farms Inc." is handwritten above.

4. The phrase "seven per cent. interest" is circled.

paid. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and nonpayment of this note. This note is in renewal of a note or balance due thereon dated [left blank] and described in a certain mortgage recorded in Chattel Mortgage Record No. [left blank] at Page [left blank] of the mortgage records of Henry County, Indiana, and not in payment of such original note, the original note being filed with said mortgage and not delivered. Payment of this renewal note shall entitle the maker to the delivery and cancellation of said original note. All covenants and agreements in said mortgage contained shall apply to this renewal note and this renewal note shall be taken and considered only as an extension of time for the payment of said debt secured by said mortgage or the proportionate part thereof and not in release or discharge of said original debt and in no sense a novation thereof, and this covenant shall be binding upon subsequent purchasers of the property pledged in said mortgage with covenant to assume and pay the same.

Negotiable and payable at Farmers State Bank, of Mooreland, Indiana.

Appellant's Appendix at 17. Jackson signed the Note "Hartford Packing Company, Inc." with "John K. Jackson" underneath. *Id.*

Hartford made several payments on the Note, ultimately repaying LFI $55,000. In November 1999, Hartford went out of business owing creditors somewhere between two and a half to three million dollars and unable to repay the remaining balance on the Note. Thereafter, LFI received a $40,000 payment from Wells–Fargo in settlement of a lawsuit filed in federal court against Hartford and two banks.

On November 12, 2004, LFI filed a complaint against both Hartford and Jackson. On July 27, 2005, LFI filed an amended complaint, which was later dismissed. On August 12, 2005, Jackson filed an answer and affirmative defenses. Hartford neither appeared nor filed an answer.[5] After Jackson and LFI waived their right to a jury trial, the trial court held a bench trial on November 3, 2006.

At trial, Luellen testified that he understood that Jackson had signed the Note personally, and that it been Luellen's intent to make Jackson personally liable for the amount owed from Hartford to LFI. Jackson, on the other hand, testified that he did not intend to make himself personally liable for Hartford's debt. He also argued that the Note was unenforceable due to lack of consideration.

After trial, the trial court issued a judgment in favor of LFI in the amount of $180,048.12. Along with this judgment, the trial court sua sponte issued findings of fact and conclusions of law, which we will reproduce below as needed. Jackson now appeals.

*Discussion and Decision*

Jackson presents two theories as to why he should not be held liable on the Note. We will first address Jackson's argument that he is not liable because he signed in solely his representative capacity. Concluding that the Note evidences an intent to bind Jackson personally, we will then address whether this promise is supported by consideration.

I. Jackson's Personal Liability

In finding Jackson personally liable, the trial court issued the following relevant findings of fact:

---

5. LFI did not seek a default judgment against Hartford.

24. That according of [sic] the testimony of Marvin Luellen, he wanted John K. Jackson to sign the promissory note in his individual capacity due to the fact that he knew John K. Jackson owned some farmland and would have the means of repaying the note.

\* \* \*

26. That John K. Jackson did not qualify his signature as President of Hartford Packing Company, Inc.

\* \* \*

31. That the plaintiff submitted into evidence the check for $200,000.00 that was loaned to Hartford Packing Company on April 29, 1997, and the endorsement shows it was signed Hartford Packing Company, Inc., John K. Jackson, President.

\* \* \*

37. That according to John K. Jackson, he signed the promissory note obligating Hartford Packing Company, Inc., and not himself personally.

\* \* \*

42. That the signature of John K. Jackson on the October 1, 1999, note is *not* unambiguous because of the fact that he did not sign in his capacity as an officer of Hartford Packing Company, Inc.

43. That since John K. Jackson's signature is not unambiguous, the provisions of Indiana Code 26–1–3.1–402(b)(2)(B) applies [sic].

44. That John K. Jackson is liable on the instrument unless he is able to prove that the original parties did not intend that he be personally liable on the instrument.

\* \* \*

47. That it is obvious from the testimony of both Marvin Luellen and John K.

Jackson that they had different intents on the way the October 1, 1999, promissory note was signed.

48. That the defendant, John K. Jackson, has failed to prove that it was the intentions of both the plaintiff and John K. Jackson that John K. Jackson was signing the October 1, 1999, promissory note solely as a representative of Hartford Packing Company, Inc.

Appellant's App. at 7–11 (emphasis in original). The trial court then concluded that Indiana Code section 26–1–3.1–402 applies, that the parties had different intentions as to whether Jackson was signing as an individual or as Hartford's president, and that LFI should recover from Jackson on the Note.

Jackson argues the trial court's order is in error because the Note is not a negotiable instrument, and therefore Indiana Code section 26–1–3.1–402 does not apply. As this section is inapplicable, Jackson argues the trial court improperly placed the burden on him to demonstrate that both parties did not intend for Jackson to be personally liable under the Note. Although we agree that the trial court improperly concluded the Note was a negotiable instrument,[6] we nevertheless conclude that Jackson is personally liable under the Note.

### A. Standard of Review

In cases such as this, where the trial court sua sponte issues findings and conclusions, we use a two-tiered standard of review. *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 212 (Ind.Ct.App.2006). First, we determine whether the evidence supports the trial court's findings. *Id.* We will conclude that the evidence does not support a finding only when the finding is

---

**6.** Although the trial court did not explicitly find the Note to be a negotiable instrument, such a finding is implicit in the finding that the Indiana Code section dealing with negotiable instruments applies.

not supported by any facts or reasonable inferences from the facts in the record. *Id.* We consider only the evidence favorable to the judgment, make all reasonable inferences in favor of the judgment, and do not reweigh evidence or judge witness credibility. *Id.* On the other hand, we give no deference to a trial court's conclusions of law, and review such conclusions de novo. *Id.* Sua sponte findings control only those issues covered by the findings, and for any issue not covered by the findings we use a general judgment standard of review. *Butler Univ. v. Estate of Verdak,* 815 N.E.2d 185, 190 (Ind.Ct.App.2004). Under this standard, we will affirm the judgment on any legal theory supported by the evidence. *Id.* at 190–91.

### B. Whether the Note is a Negotiable Instrument

■ Indiana Code Section 26–1–3.1–402 deals with situations in which an agent signs a negotiable instrument on behalf of a principal. This section applies only if the document is a negotiable instrument, as defined in Indiana Code section 26–1–3.1–104. *See* Ind.Code § 26–1–3.1–102(a) ("Ind.Code 26–1–3.1 applies to negotiable instruments."). Under section 104,

> "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money....

Ind.Code § 26–1–3.1–104(a). A promise is "unconditional" for purposes of this section "unless it states: (1) an express condition to payment; (2) that the promise or order is subject to or governed by another writing; or (3) that rights or obligations with respect to the promise or order are stated in another writing." Ind.Code § 26–1–3.1–106(a). However, a promise is not made conditional by all references to another writing; specifically, a document may refer to another writing "for a statement of rights with respect to collateral, prepayment, or acceleration." Ind.Code § 26–1–3.1–106(b). Official Comment 2 to the Uniform Commercial Code's identical section, 3–106,[7] indicates that an instrument is not negotiable if it contains any of the following statements: "This note is subject to a contract of sale ..."; "This note is subject to a loan and security agreement ..." "Rights and obligations of the parties with respect to this note are stated in an agreement...." The Note contains similar language: "All covenants and agreements in said mortgage contained shall apply to this renewal note." Appellant's App. at 17. We therefore conclude the Note is not a negotiable instrument. *See Mitchell v. Riverside Nat'l Bank,* 613 S.W.2d 802, 803 (Tex.Civ.App.1981) (note's reference to a separate contract destroyed note's negotiability as it was "burdened by the terms within the extrinsic contract"), *writ denied.*

We emphasize the mere fact that the Note refers to a mortgage does not strip it of its negotiability. *See Payne v. Munda-*

---

7. Indiana Code Chapter 26–1–3.1 is largely a wholesale adoption of this U.C.C. article. We therefore consider the official comments "persuasive in interpreting the language of the Code." *See Intelogic Trace Texcom Group, Inc. v. Merchants Nat'l Bank,* 626 N.E.2d 839, 844 n. 7 (Ind.Ct.App.1993), *trans. denied.* A rationale for giving these comments such persuasive authority is that an underlying purpose of Indiana's adoption of the U.C.C. is "to make uniform the law among the various jurisdictions." Ind.Code § 26–1–1–102(2)(c).

*ca Inv. Corp.*, 562 N.E.2d 51, 55 (Ind.Ct. App.1990) ("The note's character as a negotiable instrument is not stripped from it even though it is collateralized by a mortgage."); U.C.C. § 3–106, Official Comment 2 (indicating that the following statement would not destroy negotiability: "This note is secured by a security interest in collateral described in a security agreement. . . . Rights and obligations with respect to the collateral are [stated in] [governed by] the security agreement."). However, the Note does not indicate merely that the non-existent mortgage's statement of rights *with respect to collateral* applies to the Note, but that all agreements and covenants in that mortgage apply to the Note. *See In re Levine*, 24 B.R. 804, 810 (Bankr. S.D.N.Y.1982), (recognizing that although references to other documents does not necessarily impair negotiability, "the unlimited incorporation by reference of all of the terms of a document is an entirely different matter"), *reversed on other grounds*, 32 B.R. 742 (S.D.N.Y.1983), *aff'd*, 732 F.2d 141 (2d Cir.1984); *Holly Hill Acres, Ltd., v. Charter Bank of Gainesville*, 314 So.2d 209, 211 (Fla.Ct.App.1975) ("There is, however, a significant difference in a note stating that it is 'secured by a mortgage' from one which provides, 'the terms of said mortgage are by this reference made a part hereof.' "); *cf. United States v. Cottrell*, 287 F.Supp. 877, 883 (E.D.Cal.1968) ("A reference in a note to an extrinsic agreement does not destroy negotiability unless the reference actually makes the note 'subject to' the terms of that agreement."); *FFP Mktg. Co., Inc. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 408 (Tex.App.2005) ("Although a

promise is not made conditional by reference to a separate writing for information regarding rights and obligations with respect to collateral, here, as security for each note's payment and performance, each note incorporates by reference *the terms* of both the loan and indenture agreements." (emphasis in original)).

The fact that there is no mortgage containing covenants or agreements does not affect our analysis. *See* U.C.C. § 3–106, Official Comment ("It is not relevant whether any condition to payment is or is not stated in the writing to which reference is made."); *cf. Engine Parts, Inc. v. Citizens Bank of Clovis*, 92 N.M. 37, 582 P.2d 809, 812 (1978) ("The status of a negotiable instrument is to be determined from its face."). Indeed, the rationale of requiring that a negotiable instrument indicate that it is subject to another writing "is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." U.C.C. § 3–106, Official Comment. Further, to conclude the non-existence of the mortgage restores the Note's negotiability would be to go beyond the face of the Note and to ignore words contained in the Note, actions this court may not take. *See Paxton v. Miller*, 102 Ind.App. 511, 514, 200 N.E. 87, 88 (1936) ("The rule is well established in this state, however, that we are not permitted to ignore any word found in the instrument, but must consider the whole note or bond in determining whether or not it is negotiable within the meaning of the Negotiable Instruments Law."). We conclude that the Note is not a negotiable instrument.[8]

---

**8.** As we conclude that the Note is not a negotiable instrument based on its reference to a mortgage, we need not determine the effect of the Note's non-applicable terms and its reference to a bank that was not in existence at the time the Note was executed. We note, how-

ever, that cases decided under the Law Merchant, and well before Indiana adopted the Uniform Commercial Code, held that references to a non-existent bank would destroy an instrument's negotiability. *See First Nat'l Bank v. Grindstaff*, 45 Ind. 158, 159, 1873 WL

### C. Jackson's Liability Under the Common Law

#### 1. Question of Law vs. Question of Fact

■ Our conclusion that the Note is not a negotiable instrument renders clearly erroneous the trial court's finding and conclusion that Indiana Code section 26–1–3.1–402 applies. Therefore, the trial court improperly placed the burden on Jackson to show that both parties to the Note intended that Jackson not make himself liable. Jackson requests that we remand to the trial court with instructions to place the burden on LFI to prove all elements of its claim. However, this is not necessary, as the question of whether Jackson is liable under the contract is a question of law.

Normally, the intent of the parties is a determination left to the trier of fact. *See Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct.App.1994). However, in this case, the ambiguity in regard to the parties' intent arises solely because of the words used by Jackson in signing the Note. *See* U.C.C. § 3–402, Official Comment 2 (indicating that when an agent signs his name immediately below the principal's name without indicating that the agent signed as an agent, the signature is ambiguous as to whether the agent was signing as an agent); *cf. Holt v. Sweetzer*, 23 Ind.App. 237, 243, 55 N.E. 254, 256 (1899) (note was rendered ambiguous where signor added "Pres." after his signature). Therefore, the construction of the Note is a question of law. *Trustcorp Mortg. Co. v. Metro Mortg. Co.*, 867 N.E.2d 203, 212 (Ind.Ct. App.2007); *see Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259, 1263 (Ind.Ct.App.1993) (issue of whether signors intended to act as guarantors in personal capacity instead of corporate capacity could be resolved as a matter of law and without a factual determination as to parties' intent), *trans. denied; Kordick v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, 125 (Ind.Ct. App.1986) (where ambiguity regarding signature could be resolved without making factual determinations, issue was a question of law).

#### 2. Common Law Regarding Corporate Agent's Liability

■ Because we conclude the Note is not a negotiable instrument under Indiana Code Chapter 26–1–3.1, the Indiana Commercial Code does not apply, and the Note is instead governed by the common law. *Yin v. Society Nat'l Bank Indiana*, 665 N.E.2d 58, 62 (Ind.Ct.App.1996), *trans. denied.* When we interpret a written contract, we must attempt to determine the intent of the parties at the time the contract was made. *Reuille v. E.E. Brandenberger Constr., Inc.*, 873 N.E.2d 116, 119 (Ind.Ct.App.2007). In doing so, we will examine the language used by the parties when expressing their rights and duties under the contract. *Id.*

The Note begins with the phrase "we or either of us promise to pay...." Appellant's App. at 17. Thus, the plain language of the Note indicates that it contemplates more than one party being bound. *See Campion v. Wynn*, 486 N.E.2d 543, 545–46 (Ind.Ct.App.1985) (where promissory note contained phrase "the undersigned (jointly and severally) promise(s) to pay ...." both a corporation and its president were liable); *Taylor v. Reger*, 18 Ind.App. 466, 469, 48 N.E. 262, 263 (1897) ("A note signed by two or more persons, wherein

5407 at *1 (1873); *Parkinson v. Finch,* 45 Ind. 122, 126, 1873 WL 5646 at *5 (1873) ("[T]o make a note payable to order or bearer, in a bank in this State, negotiable as inland bills of exchange, it must be payable in a bank in this State which has an actual existence at the time the note is executed.").

the promising phrase is, 'We promise,' is prima facie the joint obligation of the makers, in their individual capacity.").

Moreover, Jackson signed the Note without identifying his representative capacity, further indicating the intent to bind him personally. *Cf. Evans v. Med. & Prof'l Collection Servs., Inc.,* 741 N.E.2d 795, 798 (Ind.Ct.App.2001) (recognizing that company's president signed in his representative, and not personal, capacity where agreement stated it was between the plaintiff and the company); *Speed v. Old Fort Supply Co., Inc.,* 737 N.E.2d 1217, 1219 (Ind.Ct.App.2000) (trial court's conclusion that corporation's president was personally liable for debt incurred through a credit agreement was not clearly erroneous, where president signed agreement with both corporation's name and his personal name, listed his personal social security number, and did not explicitly indicate that he signed in his capacity as the corporation's representative). Also, neither the Note nor the signature indicates an intent to bind solely Hartford. *See Parrish v. Terre Haute Sav. Bank,* 431 N.E.2d 132, 134 (Ind.Ct.App.1982) (noting that none of the signors to a note involving loan for corporation expenses added any conditions regarding personal liability), *trans. denied; Prescott v. Hixon,* 22 Ind.App. 139, 149, 53 N.E. 391, 393 (1899) (indicating that a signature of an individual followed with an indication of that person's position within a corporation, "in the absence of a corporate seal upon the note, or an apparent intention in the body of the instrument to bind the corporation alone" binds the individual personally). Importantly, evidence was introduced at trial that Jackson had previously signed documents with "President" following his signature. *See* Appellant's App. at 189. That he signed the Note without such a designation is further evidence of the parties' intent to bind Jackson personally. *Cf. Zimmerman v. McColley,*

826 N.E.2d 71, 77 (Ind.Ct.App.2005) (recognizing that previous communications between parties are relevant considerations when determining whether a party has manifested willingness to enter into a contract); *Clark Adver. Agency, Inc. v. Avco Broad. Corp.,* 178 Ind.App. 451, 455, 383 N.E.2d 353, 356 (1978) (examining prior dealings between parties as evidence that parties intended agency to be party to a contract).

In *Bayh v. Hanna,* 69 Ind.App. 348, 349, 122 N.E. 7, 7 (1919), the defendant signed a promissory note with the company's name on the first line and his own name, followed by "Pres." on the line below. In holding the defendant personally liable on the note, the court stated:

> The name of the corporation does not appear in the body of the instrument, so there is nothing in the language of the note itself to indicate that it is, or was intended to be, the obligation of the corporation alone, and that it was not also to be the obligation of the appellee. This being true, we must look to the signatures attached to the note, and there we find two distinct and separate names, each of which is complete within itself. There is nothing whatever on the face of the note in controversy or in the complaint to indicate that the appellee signed it as the agent of the Coal & Clay Company, nor is there anything to show who signed the name of the company.

*Id.* at 350–51, 122 N.E. at 8. Similarly, in this case, the Note itself makes no reference to Hartford. Also, the signatures of Hartford and Jackson are on separate lines and are both complete within themselves. Indeed, the Note in this case contains an even weaker indication of a possible intent to bind only the corporation. In *Bayh,* the defendant wrote "Pres." after his name, while in this case Jackson made no such notation.

Although, as the trial court found, Jackson subjectively may not have intended to bind himself, such subjective intent is largely irrelevant. *See Real Estate Support Serv., Inc. v. Nauman,* 644 N.E.2d 907, 910–11 (Ind.Ct.App.1994) ("The court does not examine the hidden intentions secreted in the heart of a person, but, rather, examines the final expression found in conduct."), *trans. denied.* Likewise, whether or not Jackson realized the legal import of his signature is irrelevant. *See Flick v. Jordan,* 74 Ind.App. 314, 320, 129 N.E. 42, 44 (1920); *Prescott v. Hixon,* 22 Ind.App. 139, 145, 53 N.E. 391, 393 (1899) ("Whether the manner and form of executing the note adopted by the appellants were the proper manner and form of executing the note of the lodge, was a question of law, which the parties will be conclusively presumed to have known.").

Finally, when interpreting a contract, we must consider the facts and circumstances leading up to the contract's execution. *Ruff v. Charter Behavioral Health Sys. of Nw. Ind., Inc.,* 699 N.E.2d 1171, 1176 (Ind. Ct.App.1998), *trans. denied.* Had Jackson signed only in his official capacity as Hartford's president, the Note would have accomplished nothing. *See JSV, Inc. v. Hene Meat Co., Inc.,* 794 N.E.2d 555, 560 (Ind.Ct.App.2003). Hartford already owed LFI on the debt, and there is no indication that this debt was disputed. Indeed, on July 22, 1999, several months before the execution of the Note, Jackson sent LFI a letter acknowledging the debt in "an attempt to put into writing that which we both have verbally agreed to." Appellant's App. at 120. These surrounding circumstances are further evidence that the purpose of the Note was to bind Jackson personally, thereby giving LFI security on the debt.

Based on the manner in which Jackson signed the Note and our consideration of the surrounding circumstances, we conclude that the Note evidences a promise on the part of Jackson to pay LFI the amount owed by Hartford.

## II. Consideration

■ Having found that the Note binds Jackson personally, we must now turn to the question of whether Jackson received any consideration in exchange for his promise. In addressing this issue, we initially point out that as we hold the Note is not a negotiable instrument, Indiana Code section 26–1–3.1–303(b) does not apply.[9] *See* Ind.Code § 26–1–3.1–102. Therefore, we again look to the common law. *See Yin,* 665 N.E.2d at 62.

■ Consideration is a requirement for a valid contract. *Zimmerman v. McColley,* 826 N.E.2d 71, 76 (Ind.Ct.App. 2005). Consideration is defined as "[s]omething of value (such as an act, a forbearance, or a return promise) received by a promisor from a promise." Black's Law Dictionary 300 (7th ed.1999). "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." *B–Dry Owners Ass'n v. B–Dry Sys., Inc.,* 636 N.E.2d 161, 163 (Ind.Ct.App.1994), *trans. denied.*

Here, the trial court found "[t]hat the consideration for the note was the unpaid balance owed by Hartford Packing Company, Inc., to the plaintiff for the unpaid balance owing on the 1998 and 1998[sic] tomatoes delivered by the plaintiff to Hartford Packing Company, Inc." Appellant's

---

9. Under this section, the Note would be supported by consideration. *See* Ind.Code § 26–1–3.1–303(a) ("An instrument is issued or transferred for value if ... the instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due."),–303(b) ("If an instrument is issued for value as stated in subsection (a), the instrument is also issued for consideration.").

App. at 31. Therefore, the trial court concluded that Jackson's promise to pay the antecedent debt of a third party constituted consideration adequate to support his promise to pay. We must disagree.

The mere fact that Jackson did not receive a personal benefit under the Note is not determinative, as "[i]t is not necessary that consideration flow directly from the payee to the makers of the note in order to bind the makers, so long as they do receive some benefit under the note." *Parrish v. Terre Haute Sav. Bank,* 431 N.E.2d 132, 136 (Ind.Ct.App.1982), *trans. denied.* In this regard, "[t]he relief from debt on the part of a corporation can be valid consideration to uphold a promissory note signed by shareholders with a vital interest in the corporation." *Id.; see also U.S. Rubber Co. v. Moon,* 93 Ind.App. 571, 577, 179 N.E. 26, 29 (1931); *cf. In re Rolfe,* 25 B.R. 89, 93 (Bankr.Mass.1982) (noting that under Massachusetts law, "consideration exists when stockholders guarantee a corporate debt"), *aff'd,* 710 F.2d 1 (1st Cir.1983).

However, the consideration in this case was not a contemporaneous extension of benefit to Hartford, but a past extension. Past consideration can generally not support a new obligation or promise. *See Field v. Alexander & Alexander of Ind., Inc.,* 503 N.E.2d 627, 631 (Ind.Ct.App. 1987), *trans. denied.* "If a person has been benefited in the past by some act or forbearance for which he incurred no legal liability and 'afterwards, whether from good feeling or interested motives, he makes a promise to the person by whose act or forbearance he has benefited, and that promise is made on no other consideration than the past benefit, it is gratuitous and cannot be enforced.'" *Brown v. Addington,* 114 Ind.App. 404, 408, 52 N.E.2d 640, 641 (1944) (quoting 17 C.J.S., Contracts, p. 470, § 116).

Here, neither Hartford nor Jackson received any benefit in exchange for Jackson's promise to pay. Unlike previous situations courts have addressed, this Note did not operate to suspend the right of LFI to enforce the debt until a future date, as the Note did not specify at what point the debt was due, and no testimony indicated that Jackson signed the Note in exchange for LFI's promise to delay collection. *See Fulton v. Laughlin,* 118 Ind. 286, 288–89, 20 N.E. 796, 797 (1889) (holding consideration existed for note signed by corporation's officers, and recognizing that "an express or implied agreement to delay the collection of a precedent debt is a sufficient consideration to support the promise of a third person"); *see also Citizens' State Bank v. Arapahoe Flour Mills,* 126 Neb. 58, 252 N.W. 475, 475 (1934) ("Extension of time on the obligation of a corporation is a sufficient consideration for the indorsement as surety of one who is president and large stockholder.").

The problem with this Note is exacerbated by the fact that Jackson had no liability on the debt when he signed the Note. In this regard, the Note is akin to a personal guaranty. In fact, Luellen's testimony indicates that he intended the Note to function as a guaranty.

[Luellen]: John signed Hartford Packing and then, John Jackson under it.

Q: And what did John Jackson under it mean to you?

[Luellen]: That guaranteed the loan.

Q: That he what?

[Luellen]: That would guarantee the loan. I mean, when you co-sign a note, that co-signor is liable, you know.

Tr. at 29.

Under Indiana law, "[i]t is not necessary for a guarantor to derive any benefit from the principal contract or the guarantee for consideration to exist. *If*

*the guarantee is made at the time of the principal contract* sufficient consideration exists." *Vanek v. Ind. Nat'l Bank*, 540 N.E.2d 81, 84 (Ind.Ct.App.1989), *aff'd*, 551 N.E.2d 1134 (Ind.1990) (emphasis added). On the other hand, when a guaranty is executed subsequent to the original contract, in order for the same consideration used to support the original contract to serve as consideration for the guaranty, one of five conditions must exist:

(1) The guaranty was executed pursuant to an understanding had before and was an inducement to the execution of the principal contract; or

(2) The guaranty was delivered before any obligation or liability was incurred under the principal contract; or

(3) The guaranty was made pursuant to a contract provision; or

(4) The principal contract does not become operative until the execution of a guaranty; or

(5) The guaranty expressly refers to a previous agreement between the principal debtor and creditor which is executory in its character and embraces prospective dealings between the parties.

*Merchants Nat'l Bank & Trust Co. of Indianapolis v. Lewark*, 503 N.E.2d 415, 417 (Ind.Ct.App.1987), *trans. denied* (quoting *Davis v. B.C.L. Enters., Inc.*, 406 N.E.2d 1204, 1205–06 (Ind.Ct.App.1980)).

None of these conditions is present here. No evidence exists showing that the parties understood when LFI extended credit to Hartford that Jackson would personally guarantee payment. *See Fleck v. Ragan*, 514 N.E.2d 1287, 1289 (Ind.Ct.App.1987) (holding consideration existed where original note was restructured with the understanding that a corporation's officers would guaranty the obligation). Hartford already had incurred liability to LFI at the time of the Note's execution. No contract provision relating to the original obligation refers to the Note. *See Wills v. Ross*, 77 Ind. 1, 10, 1881 WL 6622 at *4–5 (1881) (consideration existed for written guaranty where party had orally guaranteed payment at the time of the original agreement). The original contract existed well before the Note. And finally, the Note makes no express reference to the original agreement and does not embrace prospective dealings. Under these circumstances, no consideration exists to support Jackson's guaranty of Hartford's debt to LFI.

We conclude the Note is not enforceable against Jackson because of lack of consideration. Had Jackson promised to pay Hartford's debt at the time the tomatoes were delivered, or had Jackson signed the Note in exchange for some benefit, such as LFI's forbearance in collecting against Hartford, consideration would exist. However, the problem in this case is that neither Jackson nor Hartford received anything of benefit pursuant to the Note. Instead, the only party that benefited from the Note's execution was the promisee, LFI. Although Jackson clearly had some motive to sign the Note, the Note was not supported by consideration. *See Brown*, 114 Ind.App. at 408, 52 N.E.2d at 641. Under these circumstances, LFI may not enforce the Note against Jackson.

### Conclusion

We conclude that although the Note constituted a promise on the part of Jackson to pay Hartford's debt, the Note is unenforceable against Jackson for lack of consideration.

Reversed.

KIRSCH, J., and BARNES, J., concur.