RENDERED: OCTOBER 31, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2018-SC-000320-DG
2019-SC-000100-DG

DATE 11|25|19 JAF

COMMUNITY FINANCIAL SERVICES BANK,    APPELLANT/CROSS-APPELLEE
F/D/B/A BANK OF BENTON

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2016-CA-001533-MR
MARSHALL CIRCUIT COURT NO. 16-CI-00023

RONNY L. STAMPER        APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

In January 2016, Community Financial Services Bank, f/d/b/a Bank of Benton ("Bank") filed suit in Marshall Circuit Court to enforce a promissory note executed by Ronny Stamper in April 1997. Stamper argued that the action was untimely under Kentucky Revised Statute ("KRS") 413.090(2), which provides a fifteen-year statute of limitations for written contracts. The Bank argued that the fifteen-year statute of limitations had not yet expired based on the maturity date listed on the promissory note. The trial court agreed and granted summary judgment in favor of the Bank. On appeal, the Court of

Appeals concluded that the promissory note qualified as a negotiable instrument and, as a result, applied the six-year statute of limitations under Article 3 of Kentucky's Uniform Commercial Code ("UCC"). *See* KRS 355.3-118. Neither party had raised the applicability of KRS 355.3-118 to the trial court or the Court of Appeals. We granted discretionary review to consider whether the Court of Appeals properly considered that issue and, if so, whether the Court of Appeals correctly applied KRS 355.3-118.

## I. BACKGROUND

On April 21, 1997, Stamper obtained a loan from the Bank in the amount of $18,408.18 and executed a document titled "Note, Disclosure, and Security Agreement" (hereinafter, "Note"). The Note was payable to "The Bank of Benton ('Lender'), or order." Payments on the Note began May 25, 1997 and continued until April 25, 2002, the maturity date listed on the Note. However, the Note also provided, "Upon default, then, at the option of the Lender and without notice or demand, this agreement may be declared and thereupon immediately will become due and payable."

Stamper eventually defaulted on the loan. Though the exact date of default is unknown, an April 24, 2000 letter from the Bank notified Stamper that, due to default, the Chevrolet Blazer that he used as collateral would be sold at auction. The letter also explained that the remaining balance on the loan was $12,843.24, exclusive of expenses related to the sale. On August 25, 2000, the Bank's collections officer issued another letter, this time advising Stamper that the Chevrolet Blazer had been sold at auction and his updated

2

balance was $9,703.16. The letter stated that this balance "must either be paid in full or have a satisfactory repayment schedule established by September 15, 2000. Failure to meet this obligation will result in immediate legal action against you." It does not appear that Stamper took any action related to these letters. Several months later, by letter dated June 5, 2001, the Bank asked Stamper to contact the Bank to "work out a suitable repayment plan." The letter also advised, "In the event that we do not hear from you, we will turn over your account to an attorney or collection agency."

It does not appear that the Bank took any additional action until approximately seven years later, in March 2008, when it completed a "Litigation Checklist" for Stamper's loan. Counsel for the Bank, Stanley K. Spees, then contacted Stamper by letter dated April 2, 2008. In the letter, Mr. Spees explained that Stamper's loan had been referred for collection, and the amount due was $9,743.16, exclusive of interest. The letter notified Stamper to pay the full balance within thirty days and that failure to do so would likely result in litigation.

Apparently, Stamper's wife contacted the Bank and discussed a payment plan that would allow Stamper to begin making payments when his employment "started back up in April." It is unclear when this conversation took place. However, by letter dated April 27, 2010, the Bank contacted Stamper and his wife, referencing that conversation. Nevertheless, Stamper did not make any payments pursuant to the proposed payment plan.

3

Approximately five years later, on January 13, 2015, the Bank contacted Mr. Spees and asked that he file for a judgment lien against Stamper's property. Another year passed and on January 25, 2016, the Bank filed suit in Marshall Circuit Court, seeking judgment against Stamper in the amount of $11,204.63 plus interest and costs. Stamper did not file an answer to the Bank's complaint, and, as a result, the Bank moved for default judgment. Stamper then sought leave to file a late answer, in which he asserted a statute of limitations defense. In his Motion to File Late Answer, he argued that "[t]his claim is barred by the 15-year statute of limitation contained in KRS 413.090(2)." The trial court permitted the late answer, and discovery ensued.

The Bank then moved for summary judgment. In its motion, the Bank first cited to Stamper's own admission that he incurred the debt, defaulted on the note, and failed and refused to pay the debt, despite the Bank's demands. The Bank then argued that the note did not mature until April 25, 2002, the maturity date listed on the note. Thus, the Bank argued, the cause of action did not accrue until April 25, 2002, and it therefore filed this suit prior to the expiration of the fifteen-year statute of limitations for written contracts. In response, Stamper referred to the Note's "acceleration clause" and the Bank's August 25, 2000 letter, which required Stamper to pay the balance or establish a payment plan by September 15, 2000. According to Stamper, this accelerated the maturity date of the note. As a result, the cause of action accrued no later than September 15, 2000 and was therefore time-barred under KRS 413.090. Neither party asserted that the promissory note qualified

4

as a negotiable instrument, and neither party raised the applicability of KRS 355.3-118.

The trial court granted summary judgment in favor of the Bank. It first explained that the Note was a written contract subject to the fifteen-year statute of limitations of KRS 413.090. It then concluded that the cause of action accrued when the note matured on April 25, 2002, citing *Gould v. Bank of Independence*, 94 S.W.2d 991, 993 (Ky. 1936). As a result, the Bank's action was timely. Given Stamper's own admissions that he incurred and defaulted on this debt, the trial court granted judgment in favor of the Bank. Stamper moved the trial court to alter, amend, or vacate its order, arguing only that the cause of action accrued in September 2000. The trial court denied Stamper's motion and an appeal followed.

On appeal, both parties reasserted their previous arguments related to KRS 413.090(2), and neither party referenced KRS 355.3-118. The Court of Appeals first determined that the cause of action accrued on April 25, 2002, the maturity date listed on the note, also citing *Gould*. The Court of Appeals then concluded that "[t]he application of KRS 413.090(2) was an error of law." It explained that "[t]he record is clear that the Note at issue is a negotiable instrument" under KRS 355.3-104(1), and, as a result, the applicable statute of limitations was found in KRS 355.3-118. Concluding that the suit was untimely under this statute, the Court of Appeals reversed the trial court and remanded the matter with directions to dismiss the case as time-barred.

5

The Bank sought discretionary review, asking that we determine whether the Court of Appeals appropriately considered KRS 355.3-118 when neither party raised that statute of limitations and, if so, whether that statute of limitations applies to bar the Bank's suit. Stamper then filed his own motion for discretionary review on the issue of whether the Bank accelerated his loan via the August 2000 letter. We granted both motions for discretionary review.

## II. ANALYSIS

### A. The Court of Appeals appropriately considered KRS 355.3-118.

As a threshold matter, we first consider whether the Court of Appeals properly considered the applicability of KRS 355.3-118 when that issue was not raised or argued by the parties. We have previously held that a party's failure to provide the correct legal citation did not bar consideration of that legal authority, as "judges and justices are presumed to know the law and are charged with its proper application." *Burton v. Foster Wheeler Corp.*, 72 S.W.3d 925, 930 (Ky. 2002). We explained that "applicable legal authority is not evidence and can be resorted to at any stage of the proceedings whether cited by the litigants or simply applied, *sua sponte,* by the adjudicator(s). Nor is legal research a matter of judicial notice, for the issue is one of law, not evidence." *Id.* (citation omitted); *see also Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991) ("When the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law.").

6

In the present case, neither party argued that the Note qualified as a negotiable instrument under KRS 355.3-104 or otherwise argued the applicability of KRS 355.3-104's six-year statute of limitations. The Court of Appeals acknowledged this in its opinion but concluded that the trial court applied the incorrect law when determining the statute of limitations issue. As noted above, the courts may *sua sponte* resort to the applicable legal authority at any stage of the proceedings. Accordingly, the Court of Appeals did not err by considering the applicability of a statute of limitations not otherwise considered by the parties.

## B. The Note is a negotiable instrument under KRS 355.3-104.

We must next consider whether the trial court erred in awarding summary judgment in favor of the Bank. Thus, we must consider whether the trial court correctly found that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03; *see also Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). We review *de novo* the trial court's grant or denial of a motion for summary judgment. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014) (citation omitted).

To determine whether the Bank was entitled to summary judgment, we must first determine whether KRS 355.3-118 was the applicable statute of limitations in this case. This question, in turn, requires us to consider whether the Note is a negotiable instrument that would be governed by Article 3 of Kentucky's UCC. Both are questions of law that we review *de novo. See*

7

*Ragland v. DiGuiro*, 352 S.W.3d 908, 912 (Ky. App. 2010) (citing *Cuppy v. Gen. Acc. Fire & Life Assur. Corp.*, 378 S.W.2d 629, 631 (Ky. 1964)); *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky App. 1998). Furthermore, to the extent these issues raise questions of statutory interpretation, such questions are also subject to *de novo* review. *Halls Hardwood Floor Co. v. Stapleton*, 16 S.W.3d 327, 330 (Ky. App. 2000).

Under KRS 355.3-104, a negotiable instrument is defined as follows:

(1) Except as provided in subsections (3) and (4) of this section, "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
(a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
(b) Is payable on demand or at a definite time; and
(c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
1. An undertaking or power to give, maintain, or protect collateral to secure payment;
2. An authorization or power to the holder to confess judgment or realize on or dispose of collateral; or
3. A waiver of the benefit of any law intended for the advantage or protection of an obligor.

In this case, the Note was a promise to pay a fixed amount of money, payable to the Bank "or order," with a definite due date of April 25, 2002. The Bank argues, however, that the Note is non-negotiable because it references other agreements and would therefore require one to look beyond the Note to determine exactly how much Stamper owes. More specifically, the Bank refers to the "Definitions" section of the Note, which defines "indebtedness" as

the indebtedness evidenced by this Agreement, together with all renewals of, extensions of, modifications of, refinancings [sic] of, consolidations of, and substitutions for this Agreement, including

8

all principal and interest, all other amounts, costs and expenses for which [Stamper is] responsible under this Agreement or under any other agreement with Lender pertaining to the loan.

The "Default" section of the Note also references another agreement. That provision provides that Stamper will be in default in certain circumstances, including if Stamper "break[s] any promise made to Lender or fail[s] to perform promptly at the time and strictly in the manner provided in this Agreement or in any other agreement or loan with Lender." Because the Note references another agreement, the Bank argues, it is non-negotiable.[1]

In making this argument, the Bank cites to KRS 355.3-104(1)(c); however, we do not agree that the Note expressly "state[s] any other undertaking or instruction" by either party "to do any act in addition to the payment of money" beyond the exceptions listed in KRS 355.3-104(1)(c). Rather, the issue that the Bank raises is whether the Note is an *unconditional* promise to pay a fixed amount of money, despite its references to other agreements.

KRS 355.3-106(1) defines an unconditional promise or order. That provision states,

> Except as provided in this section, for purposes of KRS 355.3-104(1), a promise or order is unconditional unless it states:
> (a) An express condition to payment;
> (b) That the promise or order is subject to or governed by another record; or
> (c) That rights or obligations with respect to the promise or order are stated in another record. A reference to another record does not of itself make the promise or order conditional.

---

[1] No other agreement is included in the record, nor do the parties argue that another agreement actually existed.

Furthermore, under KRS 355.3-106(2), "[a] promise or order is not made conditional" merely "[b]y a reference to another record for a statement of rights with respect to collateral, prepayment, or acceleration" or when "payment is limited to resort to a particular fund or source."

This Court has previously explained that "[i]f the instrument is 'subject to or governed by another agreement,' its negotiability is destroyed." *Schmuckie v. Alvey*, 758 S.W.2d 31, 33 (Ky. 1988). Kentucky case law on this issue is sparse, however. Nevertheless, case law from other jurisdictions provides guidance, as all fifty states have adopted the UCC. These jurisdictions likewise conclude that an instrument is not negotiable if it incorporates or is subject to an outside agreement.

For example, in *Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848 (Ind. Ct. App. 2007), a case cited by the Bank, a promissory note referred to a mortgage and stated that "[a]ll covenants and agreements in said mortgage contained shall apply to this renewal note." *Id.* at 851. The Court of Appeals of Indiana noted that "a promise is not made conditional by all references to another writing," referencing its own version of the UCC's Article 3-106. As noted above, that provision permits a document to refer to "another record for a statement of rights with respect to collateral, prepayment, or acceleration." KRS 355.3-106(2). However, the Indiana court noted that under the Official Comments to the UCC, an instrument is not negotiable if it contains certain language, namely, "This note is subject to a contract of sale . . . ."; "This note is subject to a loan and security agreement . . . ."; or "Rights and obligations

10

of the parties with respect to this note are stated in an agreement . . . ." *Jackson*, 877 N.E.2d at 854. In *Jackson*, the note included similar language incorporating the terms and conditions of the mortgage, thereby rendering the note non-negotiable. *Id.*

The Court of Appeals of Texas conducted a similar analysis in *Great Northern Energy, Inc. v. Circle Ridge Production, Inc.*, 528 S.W.3d 644 (Tex. App. 2017), another case cited by the Bank. In that case, a promissory note expressly incorporated a Deed of Trust, Security Agreement, and Financing Statement. *Id.* at 661. The Texas court compared the language of the note to the language of the statements in the UCC's Official Comments. *Id.* Concluding that the statements were similar, the court held that the promissory note was *not* a negotiable instrument. *Id.*

However, a promissory note's mere *reference* to an outside agreement will not necessarily destroy negotiability. This is reflected in Article 3 of Kentucky's UCC, which expressly states, "A reference to another record does not of itself make the promise or order conditional." KRS 355.3-106(1)(c). Other state courts have similarly ruled that a note's reference to an extrinsic agreement will not automatically render it non-negotiable; however, if the note incorporates or is "subject to" that agreement, negotiability is destroyed. *See Jackson*, 877 N.E.2d at 854 (emphasizing that "the mere fact that the Note refers to a mortgage does not strip it of its negotiability") (citations omitted); *Holly Hill Acres, Ltd. v. Charter Bank of Gainesville*, 314 So.2d 209, 211 (Fla. Ct. App. 1975) (explaining that a note "secured by a mortgage" "merely refers

11

to a separate agreement which does not impede [the note's] negotiability," but when the note says "the terms of said mortgage are by this reference made a part hereof," the note is rendered non-negotiable); *United States v. Cottrell*, 287 F. Supp. 877, 883 (E.D. Cal. 1968) ("A reference in a note to an extrinsic agreement does not destroy negotiability unless the reference actually makes the note 'subject to' the terms of that agreement.").

In the present case, the language at issue is not analogous to the language recited in the UCC's Official Comments. The Note is not "subject to" any other contract or agreement, nor does it state that the parties' rights and obligations are stated in another agreement. It simply references the possibility of another agreement when defining indebtedness and default. Even with these references, the holder of the note would not be required to look beyond the note to determine its rights with respect to payment. In other words, these limited references do not threaten the unconditional right to payment. Because the Note only *references* another agreement and does not impose any conditions to payment, we conclude that the Note is an unconditional promise to pay a fixed amount of money. As noted above, the Note otherwise satisfies KRS 355.3-104's definition of negotiable instrument.

For these reasons, we conclude that the Note at issue here was a negotiable instrument as defined by KRS 355.3-104. While this Note is a negotiable instrument under KRS 355.3-104, not every promissory note qualifies as such. The elements of KRS 355.3-104 must be carefully considered to determine whether a note is a negotiable instrument subject to the statute of

limitations set forth in KRS 355.3-118 or a written contract governed by KRS 413.090.

### C. The Bank's attempt to enforce the promissory note was untimely under KRS 355.3-118.

As a negotiable instrument, the promissory note is subject to the six-year statute of limitations of KRS 355.3-118. That provision provides that

> an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date.

KRS 355.3-118(1). Here, the Bank filed suit to recover on the Note on January 25, 2016. If the cause of action accrued on the Note's stated due date of April 25, 2002, as the Bank argues, the suit was untimely. If the cause of action accrued on September 15, 2000, as Stamper argues, the suit was untimely. Accordingly, we need not determine whether the Bank's August 2000 letter effectively accelerated the due date of the Note, as this suit was barred by the applicable statute of limitations.

### III. CONCLUSION

For the reasons set forth above, we hereby affirm the decision of the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Stanley Kevin Spees


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Robert Langston Prince
Prince and Brien, PSC

Michael D. Risley
Stites & Harbison, PLLC